Rockingham
No. 80-472

*In re* VERNON E.

October 1, 1981

*Gregory H. Smith*, attorney general (*Paul W. Hodes & a.*, assistant attorneys general, on the brief and *Martha V. Gordon*, assistant attorney general, orally), for the State.

*Shute, Engel & Morse P.A.*, of Exeter (*Paul R. Pudloski* on the brief and orally), for the defendant.

DOUGLAS, J. The minor defendant raises several questions pertaining to his transfer to the superior court to be tried as an adult:

(1) was his detention illegal because the district and superior courts failed to comply with RSA 169-B:14 (Supp. 1979) (Release or Detention Pending Adjudicatory Hearing); (2) was the State required to prove each of the criteria of RSA 169-B:24 I–VIII (Supp. 1979) beyond a reasonable doubt; (3) did the district court violate his right against double jeopardy when it allowed certain evidence to be admitted at the transfer hearing; and (4) was the district court's order of certification unsupported by the record? We answer all four questions in the negative and affirm the rulings below.

The defendant, Vernon E., was a minor almost seventeen years old at the time he was arrested on June 30, 1980, and charged with felony murder. RSA 630:1-a I(b)(2). At that time, the Plaistow District Court (*Daubenspeck*, J.) ordered that Vernon E. be detained at the Rockingham County jail, provided that he not be in contact with adult offenders. The defendant was arraigned the following day, and the Court (*Andernacht*, J.) remanded him to the Rockingham County jail. That order was later amended to remand the defendant to the Youth Development Center (Y.D.C.) in Manchester, where he was transferred on July 3.

On July 2, the State filed a petition to transfer the defendant's case to the superior court. RSA 169-B:24 (Supp. 1979). A hearing on that petition was held on August 22. At that time, the defendant filed a motion to dismiss the petition on the ground that he was being detained illegally because the district court had failed to comply with RSA 169-B:14 (Supp. 1979) in ordering his detention following arraignment. On September 5, the court denied that motion, as well as a motion to set bail at $10,000.

At the hearing on the petition to transfer to the superior court, the district court allowed into evidence, over the defendant's objection, evidence of the dying declaration of the victim and the defendant's statement to the police following his arrest. On September 5, the district court issued an order of certification transferring the case to the superior court pursuant to RSA 169-B:24 (Supp. 1979) and remanding the defendant to the Rockingham County jail pending disposition of the matter in the Rockingham County Superior Court.

On September 9, the State filed in the superior court a motion to accept certification. The defendant filed a motion to stay the district court's order of certification, pending disposition of the State's motion to accept certification. That motion requested that the court set bail and, alternatively, that the defendant be held at the Y.D.C. pending action on the State's motion. Pursuant to a Sep-

tember 5 order of the Plaistow District Court, the defendant was held at the Y.D.C. pending a hearing on his motion, which was held on September 9. After the hearing, Rockingham County Superior Court (*Bean*, J.) denied the motion for a stay, refused to set bail, and declined to return the defendant to the Y.D.C. on the ground that RSA 169-B:24 (Supp. 1979) expressly prohibited the court from doing so once a minor is certified for trial as an adult and his case transferred to superior court.

On October 23, a hearing on the State's motion to accept certification was held. *Wyman*, J., granted that motion on November 3, and the defendant excepted. The court later approved the defendant's interlocutory appeal from that ruling. Currently the defendant is being held at the Rockingham County jail in lieu of $25,000 bail.

The defendant first argues that his continued detention since his arrest has been illegal because the district and superior courts failed to comply with RSA 169-B:14 (Supp. 1979) and that, therefore, the rationale of *In re Russell C.*, 120 N.H. 260, 268, 414 A.2d 934, 938 (1980), requires those courts to forfeit jurisdiction. We will address the defendant's allegations in chronological order.

■ First, the defendant argues that his pre-arraignment detention was illegal because the district court did not make written findings as required by RSA 169-B:14 III (Supp. 1979), did not make a finding of probable cause, and did not find that clear and convincing evidence required the defendant's retention as required by RSA 169-B:14 I(d)(1). The sections cited by the defendant pertain to detention *following* arraignment. Release of a minor *prior* to arraignment is governed by RSA 169-B:11 III (Supp. 1979), which provides that a court may require continued detention of the minor if, based on the criteria of RSA 169-B:14 I(d)(2) (Supp. 1979), it determines that such detention is required and provided that the minor is segregated from adult offenders. RSA 169-B:14 I(d)(2) (Supp. 1979) provides:

"A minor shall not be detained unless detention is necessary:

(i) To insure the presence of the juvenile at a subsequent hearing; or

(ii) To provide care and supervision for a minor who is in danger of harming himself when no parent, guardian, custodian or other suitable person or program is available to supervise and provide such care; or

(iii) To protect the personal safety or property of others from the probability of serious bodily or other harm."

This section does not require written findings, a determination of probable cause, or that clear and convincing evidence necessitates the detention of the defendant. Nor does RSA 169-B:11 (Supp. 1979) contain such conditions. We therefore find that the defendant was not illegally detained prior to arraignment.

▊▊▊ Next the defendant argues that his detention *following* arraignment was illegal because the court did not comply with RSA 169-B:14 (Supp. 1979). The State argues that that section is inapplicable to a juvenile who is held pending a hearing on a motion to transfer his case to superior court.

The title of the statute is "Release or Detention Pending Adjudicatory Hearing." Although a title may be considered in construing ambiguous statutory language, it is not conclusive of its interpretation. *Bourne v. Sullivan*, 104 N.H. 348, 352–53, 186 A.2d 834, 837 (1962). RSA 169-B:14 (Supp. 1979) is not ambiguous; it clearly refers to the detention of a minor "[f]ollowing arraignment," regardless of whether he is held pending an adjudicatory hearing or a hearing on a motion to transfer his case to superior court. That the title is phrased otherwise merely reflects the fact that the vast majority of cases are heard in district court and are not transferred to superior court. *See State v. Smagula*, 117 N.H. 663, 665, 377 A.2d 608, 609 (1977). Accordingly, we conclude that the district court was required to comply with RSA 169-B:14 (Supp. 1979) before ordering the defendant's detention.

▊▊▊ The fourth amendment of the United States Constitution establishes "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures. . . ." U.S. CONST. amend. IV. That amendment requires "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 124–25 (1975); *see State v. Williams*, 115 N.H. 437, 440, 343 A.2d 29, 31 (1975). Obviously, it is this fourth amendment right to be protected against unreasonable seizure that RSA 169-B:14 I(d)(1) (Supp. 1979) was designed to protect by requiring that "[n]o minor charged with delinquency shall be detained following arraignment unless the prosecution establishes probable cause to believe that the minor committed the alleged delinquent acts . . . ." The court violated the defendant's fourth amendment right when it failed to follow the procedures established by RSA 169-B:14

(Supp. 1979). The defendant therefore argues that, under *In re Russell C.*, 120 N.H. at 268, 414 A.2d at 938, violation of his fourth amendment right requires the court to forfeit jurisdiction. We disagree.

■■ *In re Russell C.*, 120 N.H. at 263–68, 414 A.2d at 935–39, involved a juvenile's statutory right to a speedy trial under RSA 169-B:14 II (Supp. 1979) and RSA 169-D:13 II (Supp. 1979). Although dismissal of criminal charges may be the appropriate remedy in cases in which the defendant's right to a speedy trial is violated, *State v. Hudson*, 119 N.H. 963, 966, 409 A.2d 1349, 1351 (1979), it is not necessarily the remedy in cases which involve a violation of a defendant's right not to be detained without due process. *Fernandez v. Trias Monge*, 586 F.2d 848, 851 n.2 (1st Cir. 1978); *see Gerstein v. Pugh*, 420 U.S. at 119. Violation of a defendant's fourth amendment right not to be detained without a determination of probable cause requires only the exclusion of statements made during the period of illegal detention. *In re R. F.*, 407 A.2d 251, 253 (Del. Fam. Ct. 1978); *see Mapp v. Ohio*, 367 U.S. 643, 657 (1961); *State v. White*, 119 N.H. 567, 570–71, 406 A.2d 291, 293 (1979).

The only statement in the record made by the defendant was made the day of his arrest, prior to his arraignment. We have already determined that his detention was in accordance with the provisions of RSA 169-B:11 (Supp. 1979) and is not illegal. The statement, therefore, need not be suppressed. Because the defendant's remedy for his unlawful detention is exclusion of statements made during that time, and because the record contains no other statements by him, we need not consider the defendant's arguments that his detention at various later times was illegal because the courts failed to comply with RSA 169-B:14 (Supp. 1979).

■ The defendant also argues that his detention was illegal because the district court refused to set bail. We find the defendant's argument to be without merit. A district court has no jurisdiction to set bail in a murder case. *See* RSA 597:4.

■■ The defendant next argues that, before a district court can transfer jurisdiction over a minor to superior court, the State must prove beyond a reasonable doubt *each* of the criteria of RSA 169-B:24 I–VIII (Supp. 1979). That argument misconceives the nature of a transfer hearing. RSA 169-B:24 (Supp. 1979) provides that "[a]ll cases before the [district] court in which the offense complained of constitutes a felony or would amount to a felony in the case of an adult *may* be transferred to the superior court. . . ."

A decision to waive jurisdiction over a minor is committed by statute to the sound discretion of the trial court. The fact that the statute requires the court to consider specific criteria in making its decision does not alter that fact. *A Juvenile v. Commonwealth*, 370 Mass. 272, 282, 347 N.E.2d 677, 684 (1976).

The guidelines of RSA 169-B:24 I–VIII (Supp. 1979) were enacted in response to this court's decision in *State v. Smagula*, 117 N.H. 663, 377 A.2d 608 (1977), which in turn adopted the safeguards for proceedings to certify a juvenile to adult court mandated by the United States Supreme Court in *Kent v. United States*, 383 U.S. 541 (1966). Although *Kent* recognized the importance of a transfer decision to a minor, 383 U.S. at 556–61, it did not alter the discretionary nature of the Court's decision. *Id.* at 559. Rather, the Supreme Court's concerns were to ensure that the juvenile court reached its decision to waive jurisdiction only after a full investigation and careful consideration of all the facts, and to provide a basis for review of the decision. *Id.* at 561.

The defendant argues that the primary consideration of the court should be whether the minor is amenable to treatment within the juvenile court system, and that the State is required to prove beyond a reasonable doubt that he is not before he can be transferred to adult court. That factor, however, is only one of eight. RSA 169-B:24 VIII (Supp. 1979). Although the United States Supreme Court listed several criteria to guide a juvenile court in making its decision, it did not specify the weight to be given to each. *Breed v. Jones*, 421 U.S. 519, 537 (1975). This court did the same in *State v. Smagula*, 117 N.H. at 668, 377 A.2d at 611; *cf.* Moeller & Brandt, *State v. Smagula: Certification of a Juvenile as an Adult—A Hobson's Choice?*, 19 N.H.B.J. 335, 346–62 (1978). Similarly, RSA 169-B:24 (Supp. 1979) mandates that a court consider the eight listed factors, but does not give preference to any one. Obviously, all eight factors will not exist in every case, and the juvenile court retains flexibility in making its decision.

Not all states have adopted the same statutory scheme. In 1977, the statutes in nineteen states required courts to look exclusively at the interests of the community, the statutes in two states required courts to balance the interests of the child and of the community, and the statute in one state required courts to focus on the best interests of the child. Sorrentino & Olsen, *Certification of Juveniles to Adult Court*, 4 PEPPERDINE L. REV. 497, 509 (1975). Focus on the interests of the child is the approach recommended by commentators. Pieroma, Ganousis & Kramer, *The*

*Juvenile Court: Current Problems, Legislative Proposals, and Model Act,* 10 ST. LOUIS U.L.J. 1, 35 (1975). States that focus on the welfare of the child quite logically require that the state meet a heavier burden of proof before a minor may be certified to adult court. *See In re Patterson,* 210 Kan. 245, 250–51, 499 P.2d 1131, 1135–36 (1972). New Hampshire's statute, however, requires a court to consider both the interests of the community and public safety, RSA 169-B:24 I (Supp. 1979), and the interests of the child, RSA 169-B:24 VIII (Supp. 1979). Neither factor is to be given greater consideration than the other. A district court has considerable discretion in balancing the factors to decide whether to transfer a minor to superior court. We need not inquire whether the State has proved any of the criteria beyond a reasonable doubt.

 Our review of the court's decision is limited to a determination whether the court fairly considered all the applicable factors of RSA 169-B:24 I–VIII (Supp. 1979); *cf. Appeal of Concord Natural Gas Corp.,* 121 N.H. 685, 693, 433 A.2d 1291, 1296–97 (1981), and whether its decision is supported by the evidence and not erroneous as a matter of law. *Cf. State v. Holden,* 119 N.H. 521, 521, 403 A.2d 435, 436 (1979); *State v. Smagula,* 117 N.H. at 667, 377 A.2d at 611.

 The defendant argues that the district court's decision is unsupported by the record. We disagree. The district court issued a detailed, seven-page report in which it considered all of the criteria of RSA 169-B:24 I–VIII (Supp. 1979) in making the decision to transfer jurisdiction over the defendant to the superior court. The court's findings are supported by evidence in the record.

 Finally, the defendant argues that the district court violated his right against double jeopardy by admitting into evidence at the transfer hearing testimony of the victim's dying declaration and the defendant's statement to the police following his arrest. That argument is based on dictum in *State v. Smagula,* 117 N.H. at 669, 377 A.2d at 611, which notes that a hearing conducted pursuant to what is now RSA 169-B:24 (Supp. 1979) must be limited to the question of transfer to the superior court and may not be adjudicatory. *Smagula* contained that cautionary language because the United States Supreme Court held in *Breed v. Jones,* 421 U.S. at 531, that a juvenile's right not to be twice put in jeopardy was violated when a court made a determination of his guilt before transferring his case to superior court where the question would be retried. Nevertheless, the *Breed* decision did not preclude

juvenile courts from requiring substantial evidence that the defendant committed the crime charged before transferring him to superior court. *Id.* at 538 n.18. Hearings to receive such evidence are similar to hearings to determine "probable cause" and do not present a double jeopardy problem. *See id.* At such hearings a court may admit any evidence "which it finds relevant, not too remote, and given by a credible witness." *State v. St. Arnault*, 114 N.H. 216, 219, 317 A.2d 789, 791 (1974).

In this case, the district court made it clear at the outset that the hearing was directed toward the question of transfer, and it admitted the evidence to which the defendant objects as bearing on several of the factors outlined in RSA 169-B:24 I–VIII (Supp. 1979), not as evidence of the defendant's guilt. Admission of the evidence under those circumstances was not erroneous. *See Stokes v. Commonwealth*, 368 Mass. 754, 761–62, 336 N.E.2d 735, 740 (1975); *State v. Smagula*, 117 N.H. at 669, 377 A.2d at 611.

Having reviewed the record and considered all the defendant's arguments, we find no error.

*Affirmed; remanded.*

BATCHELDER, J., did not sit; the others concurred.