Hillsborough
No. 87-404

THE STATE OF NEW HAMPSHIRE

v.

BRIDGET RICCIO

March 29, 1988

*Stephen E. Merrill*, attorney general (*Michael D. Ramsdell*, attorney, on the brief and orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. The defendant, Bridget Riccio, appeals her certification by the Manchester District Court (*Capistran*, J.) for trial as an adult, and the subsequent acceptance of certification by the Superior Court (*C. Flynn*, J.), on charges stemming from her involvement in an armed robbery. We affirm.

On the evening of July 5, 1987, Veronica Rudzinski was approached by two females while she was sitting in her car at Derryfield Park in Manchester. One of the females asked Rudzinski if she had "a light." The request was repeated, and as Rudzinski turned toward her inquisitor, she saw a female standing to the left of her car door, poised in a combat position and pointing a .25 caliber handgun at her. According to Rudzinski's testimony, the other female remained at the rear of the car. The assailant commanded Rudzinski not to "move a muscle or I'll shoot you." Rudzinski protested that she had no money, and reached for the gun. The assailant fired a shot, striking Rudzinski's left hand. As Rudzinski attempted to drive away she sustained four additional gunshot wounds. She made her way to a nearby friend's house, where the Manchester police were duly summoned.

During an interview on an unrelated matter with a Manchester police officer on July 16, the defendant mentioned that she knew who was responsible for the Derryfield Park shooting. The following day, July 17, the defendant, then seventeen years old, was arrested for being missing from a juvenile placement through the State Division of Children and Youth Services. She told the police then that she and another woman, Diedre Hunt, had gone to Derryfield Park intending to commit a robbery. She recounted the incident, identifying her associate as the one who pointed and fired the gun. The defendant admitted that she was the "brains" behind the operation, but claimed that she had not touched the gun and had not wanted it loaded. She asserted that she acted only as the lookout. The defendant further stated that she was "stunned" when Hunt actually fired the gun, and offered to take a polygraph to show that she had not done the shooting.

On that same day, the State filed two juvenile petitions in Manchester District Court accusing the defendant of accomplice to attempted first degree murder (RSA 626:8, 630:1-a) and conspiracy to commit robbery (RSA 629:3, 636:1). The State petitioned the district court for certification to transfer the defendant to the superior court for trial as an adult pursuant to RSA 169-B:24. The accomplice liability petition was subsequently withdrawn and replaced with three new juvenile petitions charging armed robbery (RSA 636:1), attempted first degree murder in the course of

robbery (RSA 630:1-a, I(B)(2)), and attempted first degree murder (RSA 630:1-a, I(a)), all three of which alleged that the defendant used the gun.

A hearing was held on the petition to certify on August 6, before Capistran, J. On August 7, the district court issued a two-page order granting the State's petition. The defendant filed a motion in the superior court to decline acceptance of certification. After a hearing on September 18, the Court (*C. Flynn*, J.) denied the motion, and granted the State's motion to accept certification. This appeal followed.

The defendant raises three issues on appeal: (1) whether the due process clauses of the New Hampshire and United States Constitutions require that a decision to transfer a juvenile to superior court for adult prosecution be based on clear and convincing evidence; (2) whether the findings and reasons provided by the district court in its transfer order are sufficiently specific so as to comply with RSA 169-B:24 and due process guarantees; and (3) whether the transfer order is reversible as unsupported by the evidence and erroneous as a matter of law.

The first question raised by the defendant concerns the appropriate evidentiary standard to be applied by the district court in finding that the evidence adduced at a certification hearing supports a waiver of district court jurisdiction over a juvenile and certification to superior court for trial as an adult. The defendant argues that due process under part I, article 15 of the New Hampshire Constitution and the fourteenth amendment to the United States Constitution mandates a showing of clear and convincing evidence that transfer is appropriate. In her argument, the defendant notes first that this court has already recognized that due process applies to juvenile certification hearings. *State v. Smagula*, 117 N.H. 663, 667, 377 A.2d 608, 610–11 (1977). From there, the defendant argues that a due process analysis for determining the appropriate standard of proof requires a balancing of three factors: the private interest affected by the proceeding; the risk of error created by the existing procedure; and the public interest in maintaining the procedure. *Santosky v. Kramer*, 455 U.S. 745, 754 (1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 756–57, 423 A.2d 603, 605 (1980) (*Eldridge* test appropriate for State due process analysis). In this regard, the defendant focuses on the "critical importance" to the juvenile of the waiver proceeding, *Smagula, supra* at 666–67, 377 A.2d at 610, the breadth of district court discretion, and the minimal interest the State has in

protecting the public as measured against the State's interest in guarding the welfare of children. The defendant relies on cases in which due process required a determination based on clear and convincing evidence. *E.g., Santosky v. Kramer supra* (involving termination of parental rights); *Addington v. Texas,* 441 U.S. 418 (1979) (standard for involuntary civil commitment); *In re Penny N.,* 120 N.H. 269, 414 A.2d 541 (1980) (concerning sterilization of minor incompetent). The defendant urges this court to find these cases sufficiently analogous to the case at bar to warrant a similar holding.

The State argues, on the other hand, that in the absence of a statutorily mandated standard of proof, the appropriate standard is proof by a preponderance of the evidence. The State points to numerous jurisdictions where the issue has been considered and defendant's argument rejected. The State notes further that those States with a clear and convincing evidence standard have such a standard by virtue of statute or court rule. Only one State has adopted the standard by decision, and that was apparently based more on policy grounds than on due process concerns. *In the Matter of Seven Minors,* 664 P.2d 947 (Nev. 1983). The State argues the inapplicability of *Santosky, Addington,* and *Penny N.* on the ground that those cases do not concern juvenile certification proceedings, but involve more compelling individual interests. Moreover, the State distinguishes those cases as involving a final adjudication of rights, whereas a juvenile certification hearing is investigatory in nature and does not determine the guilt or innocence of the defendant.

Although we have never adopted a specific standard of proof to be applied by a district court in finding that transfer is appropriate, we have held that the decision is statutorily vested in the sound discretion of the district court. *In re Vernon E.,* 121 N.H. 836, 843, 435 A.2d 833, 837 (1981). That discretion, however, is limited by the procedural and substantive considerations in RSA 169-B:24, adopted by the legislature in response to our decision in *Smagula. Id.* The district court must consider the eight factors enumerated in RSA 169-B:24, I–VIII, and provide a written statement of findings and reasons supporting a transfer. Moreover, a juvenile is entitled to the assistance of counsel and access to records. RSA 169-B:24. We have also held that, because of the importance of the decision, evidence supporting a transfer must be trustworthy. *State v. Gibbs,* 126 N.H. 347, 352, 492 A.2d 1367, 1370 (1985). Given these limitations, we are convinced that due process is satisfied in this case.

For two reasons, we conclude that the defendant's argument fails on the first prong of the three-pronged due process analysis, and that defendant's reliance on *Santosky, Addington,* and *Penny N.* is misplaced. First, as argued by the State, those cases involved a final adjudication of rights, whereas a juvenile certification hearing is an investigatory proceeding to determine the appropriate legal process for the juvenile defendant. We do not mean to detract from the importance of the certification hearing, since the result can lead to harsh consequences for the juvenile. *See State v. Smith,* 124 N.H. 509, 513, 474 A.2d 987, 989 (1984); *State v. Smagula, supra* at 666–67, 377 A.2d at 610. However, these consequences are not of equal immediacy or severity to those found in the trilogy of cases cited by the defendant.

The second and more important factor distinguishing *Santosky, Addington,* and *Penny N.* from the instant case is the nature of the interest sought to be protected by heightened evidentiary scrutiny. The parental rights termination in *Santosky* and the involuntary civil commitment in *Addington* have been constitutionally recognized as involving fundamental or significant liberty interests. *Santosky,* 455 U.S. at 756; *Addington,* 441 U.S. at 425. Also, in *Penny N.,* we held that the ward's interest in physical integrity is not adequately protected by a preponderance of the evidence standard. *In re Penny N.,* 120 N.H. at 271–72, 414 A.2d at 543. In the context of a juvenile certification proceeding, no similar fundamental liberty interest or compelling individual interest attaches. Indeed, a minor has no constitutional right to be tried as a juvenile. *W. M. F. v. State,* 723 P.2d 1298, 1300 (Alaska Ct. App. 1986); *Stokes v. Fair,* 581 F.2d 287, 289 (1st Cir. 1978); *Woodard v. Wainwright,* 556 F.2d 781, 785 (5th Cir. 1977), *cert. denied,* 434 U.S. 1088 (1978). Juvenile treatment is a product of statutory grant, and in this State, RSA 169-B:24 permits discretionary transfer to adult court upon the satisfaction of certain substantive considerations and procedural safeguards. *See* RSA 169-B:24, I–VIII. We see no compelling due process justification for limiting that discretion further by imposing a heightened standard by which the district court must marshal a quantum of evidence to support a transfer decision, and therefore hold that such a decision may be based only on a preponderance of the evidence.

This does not, however, absolve the district court from its responsibility to weigh the statutory criteria, to make findings, and to provide reasons for a transfer. This is the focus of defendant's second and third arguments. The defendant argues that the written order is conclusory, lacking adequate specificity of facts to support

the district court's determination. She argues further that the findings are unsupported by the evidence and in certain respects erroneous as a matter of law.

■ Since the district court's decision to transfer is discretionary, our review is limited to a determination whether the court "fairly considered all the applicable factors of RSA 169-B:24 I-VIII." *In re Vernon E.*, 121 N.H. at 844, 435 A.2d at 838. Furthermore, we will uphold the lower court's decision if it is supported by the evidence and not erroneous as a matter of law. *Id.*

■ We find that the district court fairly considered the relevant factors in making the decision to transfer. The order contains specific factual references supporting the court's conclusions on most of the statutory criteria. We recognize that the order contains some conclusory language with respect to certain factors, but the evidence on the record supports those conclusions; and, more importantly, the order read as a whole adequately supports the district court's decision to transfer. The defendant's claim of an error of law is without merit. She contends that the district court was confused with respect to the age beyond which a juvenile can no longer be confined to the county house of correction. The record reveals, however, that any confusion on the part of the district court was remedied by defense counsel's argument on the possibility of confining the defendant until her nineteenth birthday.

Although we hold that the transfer order before us contains no error, we urge the district courts in the future to be more generous in their written recitation of findings and reasons supporting a transfer.

*Affirmed.*

All concurred.