Hillsborough
No. 92-138

*In re* EDUARDO L.

March 2, 1993

*John P. Arnold*, attorney general (*Gregory W. Swope*, assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HORTON, J. This is an interlocutory appeal by the defendant, Eduardo L., from an order of the Superior Court (*Mangones*, J.) remanding for further proceedings a decision by the Nashua District Court (*Howorth*, J.) certifying him as an adult. We hold that the superior court erred in declining certification, and reverse and remand for trial.

It is alleged that on March 23, 1991, the defendant, in separate incidents, shot two persons, killing one and injuring the other. The defendant also robbed the surviving shooting victim and attempted to assault an arresting police officer. On April 2, 1991, the State, pursuant to RSA 169-B:24, filed a petition to transfer the case to superior court. A certification hearing was held on May 14, 1991, in the Nashua District Court.

At the certification hearing, the State called as its only witness Robert Hodges, a detective lieutenant with the Nashua Police Department. Hodges was then head of the department's community youth services division, a unit that investigates crimes by and against youth. He was responsible for supervising detectives in that division. Hodges testified that during the investigation of the March 23 shootings, he spoke to officers assigned to the case and reviewed their reports of the incidents.

After establishing Hodges' role as supervisor of the investigation, the State asked him to describe the contents of witness statements and police reports relating to the case. The defendant objected to the State's line of questioning. Conceding that the rules of evidence do not apply to certification proceedings, the defendant still noted that the decision to admit the reports into evidence rested within the discretion of the court. He contended that permitting Hodges to describe the statements and reports would prevent him from examining the credibility of the witnesses, and would violate his right of confrontation. The district court overruled the objection, but inquired whether the reports to which Hodges would be referring were available. The court noted that "[i]f we're going to use totem pole hearsay, we might as well get the best version of it available." The State then introduced thirteen exhibits, which consisted of various witness statements, police reports, forensic reports, a death certificate, an autopsy report, and a map of the area where the shooting took place.

On cross-examination, the defendant sought to establish that Hodges had neither personally conducted any of the witness interviews, nor written any of the reports introduced as exhibits. The State stipulated that Hodges had not been directly involved in preparing any of the witness interviews or police reports. The defendant did not further cross-examine Hodges, and the State rested. The defendant did not present any evidence, and the district court took the matter under advisement.

On July 6, 1991, the district court issued an order granting the State's petition for certification. In its order, the court addressed in

significant detail each exhibit presented by the State. It held that the majority of the statements and reports were admissible because they were relevant, not too remote, and given by credible witnesses. The district court found, however, that certain exhibits lacked independent probative value. The district court further stated:

"Th[is] court has sat on three prior certification petitions, including two involving homicides. In the latter two, hearsay questions aside, the State made a significant effort in the court's view to introduce direct evidence to support its prima facie case. Live witnesses were presented who offered significant direct testimony, and who were subjected to vigorous cross examination. Granted that significant cost and effort were involved, the level of proof offered seemed appropriate to the significance of the proceedings. Just the opposite impression was gleaned from the within proceedings. . . . [T]he State's presentation was lax to the point of being lackadaisical. Were it not due to certain fortuities arising out of this court's prior experience, the State would not have prevailed."

The State filed with the superior court a motion to accept certification, to which the defendant objected.

On December 23, 1991, the superior court held a hearing at which the parties proceeded by proffer. The defendant primarily contested the State's use of hearsay evidence during the certification hearing, arguing that such use was contrary to both statute and the State and Federal Constitutions. In addition, the defendant challenged the adequacy of evidence relied on by the district court in granting certification. The superior court declined to accept certification of the defendant as an adult for purposes of trial and remanded to the district court for a rehearing. The superior court noted that "[w]hether the State's presentation was 'lax to the point of being lackadaisical,' as noted by the District Court, or whether it merely reflected the State's extraordinary confidence in the methodology of the presentation of its case," the essential fact was that "the State put its case on by simply presenting the police reports and accompanying witness statements to the District Court." While recognizing that the rules of evidence do not apply to certification hearings, the superior court concluded that "the admission and consideration of wholesale hearsay evidence from 'a reporter of information,' under the circumstances as presented, did not comport with due process and other legal mandates."

On appeal, the defendant raises the following arguments: (1) the manner in which the State chose to proceed at the certification hearing violated his due process rights under part I, article 15 of the New Hampshire Constitution, and the fourteenth amendment of the Federal Constitution, in that he was not able to cross-examine witnesses and establish the trustworthiness of otherwise admissible hearsay statements; (2) the district court's grant of certification under RSA 169-B:24 was not supported by the evidence and was erroneous as a matter of law; and (3) the superior court erred when it remanded to the district court for a rehearing, for once certification is refused, the proper remedy is prosecution as a juvenile.

The standard for acceptance of certification by the superior court, and our scope of review, are identical and of a limited nature. Under RSA 169-B:24, the decision to transfer a juvenile to superior court for adult prosecution falls within the district court's sound discretion. *State v. Riccio*, 130 N.H. 376, 379, 540 A.2d 1239, 1241 (1988); *In re Vernon E.*, 121 N.H. 836, 843, 435 A.2d 833, 837 (1981). RSA 169-B:24 provides:

"All [juvenile] cases before the [district] court in which the offense complained of constitutes a felony or would amount to a felony in the case of an adult may be transferred to the superior court . . . . The court shall conduct a hearing on the question of transfer and shall consider, but not be limited to, the following criteria in determining whether a case should be transferred:

I. The seriousness of the alleged offense to the community and whether the protection of the community requires transfer;

II. The aggressive, violent, premeditated or wilful nature of the alleged offense;

III. Whether the alleged offense was committed against persons or property;

IV. The prosecutive merit of the complaint;

V. The desirability of trial and disposition of the entire offense in one court if the minor's associates in the alleged offense were adults who will be charged with a crime;

VI. The sophistication and maturity of the minor;

VII. The minor's prior record and prior contacts with law enforcement agencies; and

> VIII. The prospects of adequate protection of the public, and the likelihood of reasonable rehabilitation of the minor through the juvenile court system.
>
> . . . If the court orders transfer to superior court, it shall provide a written statement of findings and reasons for such transfer to the minor."

■■ The State is not required to prove beyond a reasonable doubt each of the eight criteria set forth in RSA 169-B:24. Rather, the decision to transfer is within the reasonable discretion of the district court, based upon a preponderance of the evidence, with due consideration given to each factor set forth in the statute. *See Riccio*, 130 N.H. at 380–81, 540 A.2d at 1241–42; *In re Vernon E.*, 121 N.H. at 844, 435 A.2d at 837–38. In light of the discretionary nature of the district court's decision to transfer, we limit our review to "whether the court fairly considered all the applicable factors of RSA 169-B:24, I–VIII . . . and whether its decision is supported by the evidence and not erroneous as a matter of law." *In re Vernon E.*, 121 N.H. at 844, 435 A.2d at 838 (citations omitted). We work from the same record as the superior court and, thus, owe no deference to that court's decision on acceptance. *See generally Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 330, 605 A.2d 1026, 1029 (1992) (less than ordinary deference given to lower court decision that was based on a record alone, such that the lower court "was in no better position than [the supreme court] to decide the case").

The defendant first argues that even though the rules of evidence no longer apply to certification hearings, due process requires that he have the opportunity to establish the trustworthiness of otherwise admissible hearsay statements. He further contends that his due process rights were violated because: (1) the district court admitted into evidence twelve unsworn documentary exhibits, when neither the authors of the documents, nor the witnesses who made the out-of-court statements, testified at trial; and (2) in three instances the district court relied upon its own knowledge and records in deciding the propriety of the transfer to superior court.

■■ It is settled that due process applies to juvenile certification proceedings. *See Riccio*, 130 N.H. at 379, 540 A.2d at 1241; *In re Gault*, 387 U.S. 1, 13 (1967). Our present task is to determine how much process is due, and whether due process tempers the admissibility of hearsay evidence. We first assess the defendant's due proc-

ess claim under part I, article 15 of the New Hampshire Constitution. *See State v. Ball,* 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1983). Since we find article 15 at least as protective of individual liberties as the fourteenth amendment, we need not conduct a separate due process analysis under the Federal Constitution. *See id.*

Before embarking on a determination of whether procedural due process requires that the defendant have an opportunity to cross-examine witnesses at a certification hearing, we note briefly the process we have found due to date. A juvenile certification hearing affects rights that are of vital importance to the defendant. *See State v. Smagula,* 117 N.H. 663, 666–67, 377 A.2d 608, 610 (1977); *Kent v. United States,* 383 U.S. 541, 556 (1966). The United States Supreme Court, after considering a juvenile court statute similar to RSA 169-B:24, *see Smagula,* 117 N.H. at 666, 377 A.2d at 610, held that "the [certification] hearing must measure up to the essentials of due process and fair treatment." *Kent,* 383 U.S. at 562. Accordingly, we have held that "the procedural safeguards specified in *Kent* are henceforth to be applied under RSA 169:21 [now codified as RSA 169-B:24] and N.H. Const. pt. I, art. 15." *Smagula,* 117 N.H. at 667, 377 A.2d at 610–11. Thus, in developing a standard for measuring procedural due process, we adopted the following criteria, which were first identified by the United States Supreme Court, and later codified by the New Hampshire Legislature as RSA 169-B:24:

> "[T]he juvenile is entitled to notice and a hearing in district or municipal court on the question of waiver, with the assistance of counsel. The counsel must be provided with access to court records and probation reports or other juvenile files on the minor involved. Finally, prior to transfer or indictment, the juvenile must be given a written statement of findings and reasons for making the transfer to superior court. In determining whether to allow the transfer, the superior court shall accept the district court's waiver decision unless upon review of the record it finds the ruling to have been unsupported by the evidence, or erroneous as a matter of law."

*Smagula,* 117 N.H. at 667, 377 A.2d at 611. In sum, we have held that procedural due process applies to juvenile certification hearings and requires that the defendant be given notice, a hearing, the right to review records, and the assistance of counsel. *See id.*; Kent, 383 U.S. at 561. Moreover, we have required that the evidence supporting a transfer be trustworthy. *See Riccio,* 130 N.H. at 379, 540 A.2d at 1241.

■ The defendant argues that we should expand these due process protections to include some measure of confrontation with witnesses. To determine whether the State's decision to rely exclusively on the supervising officer, Hodges, to present its case comported with due process, or, as asserted by the defendant, due process requires meaningful cross-examination, we review the following three factors:

> "'(1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.'"

*State v. Poulicakos*, 131 N.H. 709, 712–13, 559 A.2d 1341, 1343 (1989) (quoting *Petition of Bagley*, 128 N.H. 275, 285, 513 A.2d 331, 338–39 (1986)). Applying this three-part test, we hold that a defendant does not have a general due process right to meaningful cross-examination in a juvenile certification hearing, and that such cross-examination is warranted only when necessary to ensure the trustworthiness of evidence presented during the hearing.

As a preliminary matter, we note that the superior court relied upon our holding in *Poulicakos*, 131 N.H. at 710, 559 A.2d at 1343, in requiring that the State proceed in juvenile certification hearings in a manner that enables the defendant to conduct a "meaningful cross examination." We held in *Poulicakos* that the State may proceed by proffer at a pretrial detention hearing. *Id.* at 712, 559 A.2d at 1343. If, however, the defendant questions the accuracy of the proffer, the trial court "can require the prosecution to present witnesses to buttress its offer of proof." *Id.* We further explained that in order to make meaningful the defendant's right to cross-examine, as guaranteed by the then effective bail detention statute, RSA 597:6-a, VII (repealed 1989), the State had to supply a witness "capable of being effectively cross-examined," who was "more than a mere reporter of information gathered by others." *Id.* We emphasized, however, that the State need not make available all sources of information underlying its offer of proof. *Id.* The statute suspended the rules of evidence during pretrial detention hearings, thereby allowing the admission of hearsay testimony. *Id.*

The defendant in *Poulicakos* argued that proceeding in such a manner violated his due process rights, and that the State should

have been required to present its case through live witnesses. *Id.* at 711, 559 A.2d at 1343. We applied the three-part due process test and disagreed. While the defendant had a liberty interest in remaining free pending his trial, we found that, as to the second prong, sufficient safeguards exist at a detention hearing to guard "against an erroneous deprivation of a defendant's liberty." *Id.* at 713, 559 A.2d at 1343. Moreover, as to the test's third prong, we explained that "requiring the State to present its case through live witnesses would increase the fiscal and administrative burdens not only on the court, but also on the prosecution and on law enforcement officials." *Id.* at 711, 559 A.2d at 1344.

Our decision in *Poulicakos*, to require the State to present live witnesses upon challenge to the accuracy of the proffered evidence, turned on the defendant's statutory right to cross-examine witnesses, and on the fact that a strong liberty interest was at stake. *Id.* at 712, 559 A.2d at 1343–44. In the present case, RSA 169-B:24 does not provide a right to cross-examine. In addition, the interest at stake in juvenile certification hearings is not as compelling as in pretrial detention hearings. *Riccio*, 130 N.H. at 380, 540 A.2d at 1242. The interest in certification proceedings is not a present liberty interest, but the right to a proper choice between alternative procedures for the determination of guilt or innocence, and the appropriate imposition of sentence.

■ We examine the constitutionality of the State's procedures by subjecting them to the three-part due process test. We have already had occasion to apply the test's first prong to juvenile certification hearings. In *Riccio*, we determined that the private interest affected in such hearings, while critical, is not dispositive. *Id.* at 380, 540 A.2d at 1241–42. The purpose of the hearings is not adjudicatory, but rather what we termed "investigatory." *Id.* A juvenile certification hearing is not determinative of guilt or innocence, or of a right to liberty, but designed to identify the appropriate procedure to achieve a fair resolution of guilt or innocence and any punishment flowing therefrom. *Id.*

■■ In regard to the test's second prong, we discern no substantial risk in relying upon the district court's ability to consider the trustworthiness of the evidence at issue. At juvenile certification hearings, the State is not statutorily required, as it is in the context of bail hearings, to present live witnesses. The district court may consider the indicia of trustworthiness of evidence sought to be admitted, and it has the discretion to require live witnesses where it is

not satisfied with the trustworthiness of the evidence. In the case below, the district court considered the State's evidence and found much of it to be sufficiently trustworthy to support certification. This procedure provides adequate protection against the erroneous certification of a juvenile as an adult. In regard to the third prong of the due process test, we find the governmental interest in this case as compelling as in *Poulicakos*; namely, to avoid transforming an investigative hearing into a full-blown trial, and to reduce fiscal and administrative burdens on the court, the prosecution, and law enforcement officials.

The due process test aside, it is important to note that the defendant was not categorically precluded from challenging the veracity of the State's evidence. He had access to the entire investigative file prior to the certification hearing and could have contested the information contained therein. Finally, we emphasize that there is no constitutional right to confrontation at stake. Part I, article 15 of the New Hampshire Constitution, granting one accused of a crime the right to directly confront the witnesses against him, "reflects a preference for face-to-face confrontation *at trial.*" *State v. Peters*, 133 N.H. 791, 794, 587 A.2d 587, 588–89 (1991) (quotation omitted); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (cross-examination right is a trial right). We are not concerned here with the defendant's trial rights.

We must now ascertain whether the district court in this case properly admitted the hearsay evidence at issue. In *State v. Nicholas H.*, 131 N.H. 569, 573, 560 A.2d 1156, 1158 (1989), we reversed and remanded the superior court's acceptance of the district court's certification of a minor child for trial as an adult because the district court, when weighing the prosecutive merit of the case pursuant to RSA 169-B:24, IV, erroneously considered hearsay evidence in violation of the New Hampshire Rules of Evidence. Subsequent to our decision in *Nicholas H.*, we amended the rules of evidence, and they do not now apply to juvenile certification proceedings. N.H. R. EV. 1101(d)(3) (1992). The amendment effectively overruled *Nicholas H.* to the extent the case held that the rules of evidence preclude the introduction of hearsay at juvenile certification hearings.

We noted in *Nicholas H.* that prior to our adoption of the New Hampshire Rules of Evidence, hearsay evidence was admissible at a juvenile certification hearing if it was "relevant, not too remote, and given by a credible witness." 131 N.H. at 572, 560 A.2d at 1158 (quotation omitted). We see no reason why our decisions prior to the

adoption of the rules of evidence should not apply now that the rules no longer govern juvenile proceedings.

 We accordingly hold that evidence is admissible at a juvenile certification hearing as long as there is some guarantee of trustworthiness. *See id.* To make this finding, the court should consider whether the evidence is relevant, not too remote and credible. *See id.; In re Vernon*, 121 N.H. at 845, 435 A.2d at 838. In the present case, the district court applied this standard with considerable care, rejecting some of the evidence submitted. We do not find error in its determination on that part of the State's evidence found admissible.

The defendant further contends that the district court violated his due process rights when it relied on information extrinsic to the certification hearing to evaluate the trustworthiness of the State's evidence and determine whether certification was warranted under the eight factors set forth in RSA 169-B:24. Specifically, the defendant asserts that the district court erred when it: (1) disregarded a map drawn by Hodges of the crime scene, and relied instead upon its own unannounced view of the area; (2) reviewed materials not introduced at the hearing when ascertaining whether the defendant had a prior record; and (3) relied upon its own knowledge to evaluate the trustworthiness of laboratory tests on a pistol and ammunition casings allegedly used by the defendant.

 The State claims as a threshold matter that because the defendant failed to object to the district court's reliance on this extrinsic evidence, he did not preserve these issues for appeal. We agree with the State at least in regard to any challenge based on the laboratory tests. When the State introduced the tests, it asked Hodges whether the pistol tested was the same weapon mentioned in a firearms transaction record previously authenticated and admitted through Hodges. The defendant objected, arguing that the State had not laid a foundation for this line of questioning. The district court sustained the defendant's objection. When the court later admitted the record of the tests themselves, the defendant did not contest the qualifications of the State expert who conducted the tests. The court found the tests trustworthy "solely" on the basis of its independent knowledge of the expert's qualifications. To preserve an objection for appeal, a party must make "a contemporaneous objection . . . stating explicitly the specific ground of objection." *See State v. Dube*, 130 N.H. 770, 772, 547 A.2d 283, 284 (1988) (quotation omitted). Because the defendant in this case failed to contest the qualifications of the State's expert, any objection grounded in this issue "shall be deemed waived." *Id.*

■ We do not find that the defendant waived his objection to the district court's use of evidence generated by its view of the crime scene and its review of the defendant's record. Since the district court did not disclose, prior to issuing the certification order, its reliance on this evidence, an objection at the certification hearing was not required. In addition, the defendant did not waive this objection by failing to file a motion for reconsideration with the district court. With certification, jurisdiction over the matter passed to the superior court, and the defendant adequately raised the issue in his motion to that court.

Turning next to the substance of the defendant's due process claim, we conclude that the production and review of evidence outside of the certification hearing in this case was appropriate, when it was done for the limited purpose of testing the trustworthiness of evidence already introduced during the hearings. Such a practice is appropriate in light of our characterization of certification hearings as investigative rather than adjudicatory proceedings. District courts must consider eight criteria when determining whether to certify a juvenile as an adult, and they are charged with evaluating the trustworthiness of any evidence submitted in support of certification. The collateral use of extrinsic evidence, to determine trustworthiness of evidence already made open to challenge by the juvenile defendant, is not a *per se* violation of due process. Nonetheless, this practice must still satisfy the due process guarantees we have found applicable to juvenile certification proceedings. Because these guarantees include the right to counsel and the right to review the records, the court's use of independently developed evidence that is not derivative of evidence admitted at the hearing, and that is directly material to the issue of certification, would be improper.

■ In the present case, we find that the district court did not err in relying on its unannounced view of the crime scene. During the hearing, the State questioned Hodges about the geographic area that encompassed the crime scene and the defendant's home. It further requested that Hodges clarify his oral description by drawing a diagram of the area. The district court admitted the diagram into evidence without objection from the defendant. In its order, the district court explained that in evaluating Hodges' description of the area, it had relied "on its own view rather than the content of" Hodges' diagram. Such reliance illustrated an appropriate collateral use of extrinsic evidence. The court was not seeking new information, but attempting only to establish the trustworthiness of evidence that had

already been made part of the record. Furthermore, had the court found Hodges' diagram inconsistent with its independent view of the area, this conclusion would have served the defendant's interests by shedding doubt on Hodges' credibility.

In contrast, the district court's independent review of the defendant's juvenile record is an example of the improper use of extrinsic evidence. The court's consideration of this evidence, without the knowledge of the defendant, served not simply to test the credibility of evidence already introduced at the hearing, but opened up new evidentiary channels of inquiry as to whether certification was warranted under the eight factors set forth in RSA 169-B:24. Specifically, the statute directed the court to consider the defendant's "prior record and prior contacts with law enforcement agencies." RSA 169-B:24, VII. We hold, however, that any error by the district court in going beyond the evidence presented at the hearing, to determine whether the defendant had a prior record, was rendered harmless by the court's ultimate decision that the defendant's record was not "sufficiently significant" to weigh in favor of certification under RSA 169-B:24, VII.

The defendant next argues that the district court's grant of certification pursuant to RSA 169-B:24 was unsupported by the evidence and erroneous as a matter of law. We disagree. The defendant's argument is premised upon the assumption that the district court improperly admitted twelve of the thirteen exhibits that comprised the State's case. Because we find that the district court did not err when it admitted the contested hearsay evidence, the defendant's sufficiency argument is without merit.

As stated earlier, due to the discretionary nature of the district court's decision to transfer, our review is limited to determining whether it "fairly considered all the applicable factors of RSA 169-B:24, I–VIII." *In re Vernon E.*, 121 N.H. at 844, 435 A.2d at 838. We will affirm the district court's decision "if it is supported by the evidence and is not erroneous as a matter of law." *Riccio*, 130 N.H. at 381, 540 A.2d at 1242.

A review of the district court's order indicates that it fairly considered the applicable factors in reaching its decision to transfer. The court applied the facts adduced at the hearing to the specific statutory criteria. Read as a whole, the order supports the district court's decision to transfer. We find no error of law on the record.

We hold that the superior court erred when it declined to accept the certification of the defendant as an adult for purposes of

trial and remanded for further hearing. We, therefore, need not address the defendant's arguments regarding the propriety of the remand for futher hearing. We reverse and remand this case to the superior court and direct that the superior court accept certification of the juvenile defendant.

*Reversed and remanded.*

All concurred.