**STATE of Maine**

**v.**

**Luis ROSADO.**

Supreme Judicial Court of Maine.

Argued Sept. 18, 1995.

Decided Jan. 2, 1996.

Andrew Ketterer, Attorney General, Wayne S. Moss (orally), Thomas Goodwin, Assistant Attorneys General, Augusta, for the State.

Timothy S. Murphy (orally), Gardner, Gardner & Murphy, Saco, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Luis Rosado appeals from the judgment entered in the Superior Court (York County, *Cole. J.*) affirming the judgment of the District Court (Biddeford, *Gaulin, J.*) binding him over to the Superior Court for trial as an adult on a charge of manslaughter. He also appeals from the sentence imposed by the Superior Court (York County, *Brennan, J.*) following his conditional guilty plea. Rosado argues that the State's statutory burden to prove his bind-over "appropriate" by a mere preponderance of the evidence violates the United States and Maine Constitutions' guarantees of due process. In the alternative he argues that even if the standard of proof is constitutional the District Court abused its discretion in finding his bind-over to the Superior Court appropriate. Finally, Rosado argues that the Superior Court failed to adhere to the sentencing procedure required by law. We affirm the judgment of Rosado's conviction and the sentence imposed on him.

From evidence presented at the bind-over hearing the court could have found the following facts. On April 21, 1992, Rosado,

then fifteen years old, and a number of other juveniles were walking down a Saco street when Donald Farda came out of a neighboring house in response to the commotion generated by the young people. A confrontation ensued. One of the juveniles carried a bat, which at Rosado's urging was passed to him. Rosado swung the bat at Farda, striking him in the back of the head. Farda died nine days later from trauma induced by the blow.

Following a bind-over hearing pursuant to 15 M.R.S.A. § 3101(4)(E) (1980 & Supp. 1994), the District Court acting in its capacity as a juvenile court ordered Luis Rosado to be tried as an adult in connection with the death of Donald Farda. Rosado appealed the bind-over order. The Superior Court affirmed. A grand jury indicted Rosado for manslaughter in violation of 17–A M.R.S.A. § 203 (1983 & Supp.1994). Pursuant to M.R.Crim.P. 11(a)(2) the Superior Court accepted Rosado's conditional guilty plea, preserving for review the court's denial of his appeal from the juvenile court bind-over order, and sentenced Rosado to fifteen years imprisonment with all but thirteen years suspended and six years probation.

## I.

When the Superior Court acts as an intermediate appellate court, we review directly the record before the District Court. *State v. Flint H.*, 544 A.2d 739, 741 (Me. 1988). Rosado argues that the statutory standard of proof required in a bind-over determination [1] is unconstitutionally low. He urges that the federal and state constitutional guarantees of due process require an evidentiary standard higher than a preponderance of the evidence before a determination that a juvenile should be prosecuted as an adult.

This Court "has long adhered to the principle that the Maine Constitution and the Constitution of the United States are declarative of identical concepts of due process." *Penobscot Area Hous. Dev. Corp. v. Brewer,* 434 A.2d 14, 24 n. 9 (Me.1981). The Supreme Court has held that the United States Constitution's due process guarantee does not require proof at a uniform evidentiary standard in all judicial proceedings. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Due process is a function of three variable factors: (1) the private interests affected by the proceeding, (2) the risk of erroneous deprivation of those interests by the State's chosen procedure, and (3) the countervailing government interest supporting use of the challenged procedure. *Id.* at 335, 96 S.Ct. at 903. The Supreme Court has declared that the three-part *Eldridge* test is weighted with no presumptions and that each of the three factors is to be treated with straightforward consideration in determining whether a particular standard of proof in a particular proceeding satisfies the constitutional requirement of due process. *Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982). We follow the *Eldridge* test for determining the standard of proof required by due process. *In re Sabrina,* 460 A.2d 1009, 1016 (Me.1983).

### The *Eldridge* Factors in a Juvenile Bind–Over Proceeding

As used in assessing the *Eldridge* factors, the risk of error resulting from a proceeding is not the statistical probability of the occurrence of judicial error but the seriousness of the consequences of judicial error. The risk of error in a given legal process is a function of the nature of the defendant's interests and the permanency of their threat-

---

1. Title 15 M.R.S.A. § 3101(4)(E) (1980 & Supp. 1994) provides:

   The Juvenile Court shall bind a juvenile over to the Superior Court if it finds:

   (1) That there is probable cause to believe that a juvenile crime has been committed that would constitute murder or a Class A, Class B or Class C crime if the juvenile involved were an adult and that the juvenile to be bound over committed it; and

   (2) By a preponderance of the evidence that, after a consideration of the seriousness of the crime, the characteristics of the juvenile and the dispositional alternatives available to the Juvenile Court, as specified in paragraph D, it is appropriate to prosecute the juvenile as if he were an adult.

ened loss under that procedure. *Santosky v. Kramer,* 455 U.S. at 758, 102 S.Ct. at 1397.

A jurisdictional transfer does not involve final adjudication of rights. *State v. Riccio,* 130 N.H. 376, 540 A.2d 1239, 1241 (1988). Bind-over for trial as an adult does not *of itself* put a juvenile defendant's liberty at risk nor deny the juvenile the opportunity for rehabilitation nor impose a sentence or lengthen a sentence. A bind-over order does not foreclose the juvenile defendant's other interests but merely designates the further legal process by which the juvenile's rights will be addressed. In an erroneous bind-over for trial as an adult the risk to a juvenile accused of a serious crime is exposure to adult punishment. A juvenile offender charged with a serious crime does not risk loss of confidentiality in being bound over for trial as an adult because no confidentiality is afforded a juvenile accused of a class A, B, or C crime. 15 M.R.S.A. § 3307 (1980 & Supp. 1994). A juvenile defendant, however, unlike an adult defendant, enjoys the protection of the preponderance of the evidence requirement before being exposed to a trial as an adult and the potential for adult sentencing. An adult is exposed to a trial and to the potential for adult sentencing at the lesser standard of proof required to establish probable cause.

Because a transfer to the Superior Court itself places no compelling or fundamental right of the juvenile at risk, other than exposure to the potential for a longer sentence, the juvenile's interest in a trial as a juvenile does not outweigh the State's vital interest in controlling serious crime by treating a juvenile as an adult when it is found there is probable cause that the juvenile has committed an adult crime. The *Eldridge* doctrine requires of the juvenile bind-over proceeding no more by way of proof than the preponderance of the evidence standard the Legislature already has attached to it by statute.

## II.

■ Arguing in the alternative, Rosado contends that the District Court erred in finding by a preponderance of the evidence offered at the bind-over hearing that it was "appropriate" to bind him over for trial as an adult.

### Standard of Review

■ In determining whether a bind-over is appropriate, the District Court first must make statutorily required subsidiary findings, which are reviewed as findings of fact under the clear error standard. *State v. Sanborn,* 644 A.2d 475, 478 (Me.1994). These findings will be set aside only if (1) there is no competent evidence on the record to support a finding, (2) a finding is based upon a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence taken as a whole "rationally persuades to a certainty that [a] finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Pongonis v. Pongonis,* 606 A.2d 1055, 1057–58 (Me.1992).

### Subsidiary Findings

The District Court in determining the appropriateness of a bind-over must make subsidiary factual findings pursuant to statute. The court must consider the nature and seriousness of the offense, giving greater weight to offenses against the person, and must find whether the offense was committed in an "aggressive, violent, premeditated or willful manner." 15 M.R.S.A. § 3101(4)(D)(1) (1980 & Supp.1994). Luis Rosado hit Donald Farda in the back of the head with a baseball bat hard enough to inflict multiple fractures of his skull. The evidence supports a finding that Rosado's conduct constituted a violent, willful, aggressive act.

The District Court in determining the appropriateness of a bind-over for trial as an adult next must consider the defendant's record, his emotional attitude, and his "pattern of living." 15 M.R.S.A. § 3101(4)(D)(2) (1980 & Supp.1994). Rosado at the time of the bind-over hearing faced three pending charges in District Court for assault, burglary, and possession of a firearm. As a juvenile, dependent on his mother, he had been involved in street gangs in New York City before moving to Maine and soon after his arrival in Maine became involved with youth

gangs implicated in robbing and stabbing incidents. A psychological evaluation described Rosado as suffering from poor social judgment and posing a significant danger to others.

The District Court in deciding the appropriateness of a bind-over must determine whether alternatives to trial as an adult would deter future criminal conduct by the juvenile, whether the use of such alternatives would diminish the gravity of the offense, and whether community safety requires committing the juvenile defendant to a facility more secure than juvenile facilities. M.R.S.A. § 3101(4)(D)(3) (1980 & Supp.1994). Pursuant to currently available Maine dispositional alternatives, rehabilitative probation may be imposed upon a convicted juvenile only after a sentence of incarceration in prison as an adult or after a suspended sentence to the youth center. 15 M.R.S.A. § 3314(1)(H) (1980 & Supp.1994). The evidence supports a finding that disposition as a juvenile to the Maine Youth Center, which would have to be suspended in order to effect rehabilitative probation, would diminish the gravity of Rosado's offense, would not deter such conduct in the future, and would compromise public safety. The evidence also supports a finding that incarceration of Rosado as a juvenile, with no probation therefore possible and release at age twenty-one, would allow as little as two years of rehabilitative treatment for a *young man evaluated as needing long term help.*

### Bind–Over Appropriate

Competent evidence on the record supports the court's findings that Rosado's offense was willful and violent and unmitigated by any need for self defense, that Rosado could be rehabilitated only by years of struc-

tured treatment, and that assigning Rosado to the limited juvenile detention alternatives available would diminish the gravity of his offense and provide inadequate time for rehabilitation. On the basis of these competently supported findings, the District Court did not err as a matter of law in ruling that by a preponderance of the evidence bind-over for trial as an adult was appropriate in this case.

### III.

■ Pursuant to 15 M.R.S.A. §§ 2151–2157 (Supp.1994), the Sentence Review Panel of the Supreme Judicial Court granted Rosado leave to appeal his sentence, and this appeal followed. Rosado argues on appeal that the Superior Court abused its discretion pursuant to the sentencing procedure dictated by law in sentencing him to fifteen years in state prison with all but thirteen years suspended and six years probation. We disagree and affirm the judgment imposing sentence.

■ In *State v. Hewey*, 622 A.2d 1151, 1154–55 (Me.1993) we declared the three-step analysis[2] a court must undertake in imposing a sentence pursuant to Maine statute. We review the court's determination of the *basic* period of incarceration *de novo* for misapplication of principles of law. *State v. Hewey*, 622 at 1155. We accord greater deference to the sentencing court's discretion in determining the *maximum* period of incarceration and any *suspended* portion, recognizing the sentencing court's "superior posture for evaluating evidence of the circumstances of the offender." *Id.*

The court identified a basic period of incarceration of fifteen years. In determining the maximum period of incarceration in Rosado's

---

**2.** In *State v. Hewey*, 622 A.2d at 1154–55 we explicated the three steps of the statutory sentencing procedure set out at Title 17–A M.R.S.A. §§ 1151–1356 (1983 & Supp.1994).

(1) The court first must determine a *basic* period of incarceration. The *basic* period of incarceration is determined solely by reference to the nature and seriousness of the offender's criminal conduct without regard to the individual circumstances of the offender.

(2) The court thereafter *must consider* sentencing limitations imposed by statute as well

as factors peculiar to the offender, including mitigating factors and aggravating factors, to modify the basic period of incarceration and determine the *maximum* period of incarceration to which the particular offender is subject.

(3) The court at its discretion finally may determine a *suspended* portion of the maximum period of incarceration if the court determines on the basis of the individual offender's circumstances that society will be better protected by assigning the offender supervised probation rather than incarceration.

case the court considered aggravating and mitigating circumstances as required, found them in equipoise, and arrived at a fifteen-year maximum period of incarceration. Having determined a maximum period of incarceration for Rosado of fifteen years, the court suspended two years in order to be able to assign Rosado probation. Although it would have been the better practice for the court to spell out explicitly each of the separate steps of the required sentencing analysis, the court did undertake all necessary steps in imposing sentencing and adhered to the statutory purposes of sentencing. We find no error in the sentence imposed by the trial court.

The entry is:

Judgment affirmed. Sentence affirmed.

All concurring.