Hillsborough-northern judicial district
No. 2009-469

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM PLOOF

Argued: April 7, 2011
Opinion Issued: November 2, 2011

*Michael A. Delaney,* attorney general (*Thomas E. Bocian,* assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J. The defendant, William Ploof, appeals an order of the Superior Court (*Abramson,* J.) committing him to the custody of the New Hampshire Department of Corrections as a sexually violent predator pursuant to RSA 135-E:13 (Supp. 2010). He argues that, on its face, the statute violates his right to procedural due process, the State Constitution's separation of powers provision, and his right to equal protection. We affirm.

In 1998, the defendant pleaded guilty to one count of aggravated felonious sexual assault and one count of sexual assault. The court sentenced him to concurrent terms of four to ten years at the state prison and twelve months at the house of corrections. In March 2007, as the defendant approached the end of his prison term, the Hillsborough County Attorney initiated the process established under RSA chapter 135-E for

the involuntary commitment of sexually violent predators. In May 2007, a multidisciplinary team issued a report concluding that the defendant was a sexually violent predator within the meaning of the statute, after which the county attorney petitioned the superior court to commit him.

Prior to trial, the defendant moved to dismiss the petition, arguing that RSA chapter 135-E violates his state and federal constitutional rights to equal protection and due process of law. The trial court denied the motion. Subsequently, the defendant asked the trial court to find RSA 135-E:10, I, unconstitutional as a violation of the Separation of Powers Clause of the State Constitution. The trial court denied the motion. Following a seven-day trial, the jury unanimously found that the defendant is a sexually violent predator and the trial court entered an order committing him to the custody of the department of corrections for a period of five years.

■ The defendant has raised a facial challenge to RSA chapter 135-E. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *State v. Furgal*, 161 N.H. 206, 210 (2010) (quotation omitted). For the reasons stated herein, we conclude that the defendant has not succeeded in carrying this heavy burden.

We review the trial court's interpretation of the statute *de novo. See State v. Matthews*, 157 N.H. 415, 417 (2008). When reviewing a legislative act, "we presume it to be constitutional and will not declare it invalid except upon inescapable grounds. In other words, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution." *State v. Hynes*, 159 N.H. 187, 199-200 (2009) (citations omitted). "When doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality." *Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State*, 161 N.H. 49, 53 (2010). The party challenging a statute's constitutionality bears the burden of proof. *New Hampshire Health Care Assoc. v. Governor*, 161 N.H. 378, 385 (2011) (quotation omitted).

In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *First Berkshire Bus. Trust v. Comm'r, N.H. Dep't of Revenue Admin.*, 161 N.H. 176, 179 (2010). When examining the language of a statute we ascribe the plain and ordinary meaning to the words used. *Id.* at 180. We read words or phrases not in isolation, but in the context of the entire statute and the entire statutory scheme. *Id.* When the language of a statute is plain and unambiguous, we do not look beyond it for further indications of legislative intent. *Id.*

## I. RSA Chapter 135-E

The process for civil commitment of sexually violent predators begins several months before a person who has committed a sexually violent offense is to be released from prison. RSA 135-E:3, II. A sexually violent predator is any person who "[h]as been convicted of a sexually violent offense" and "[s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." RSA 135-E:2, XII. The term "[m]ental abnormality" is defined as "a mental condition affecting a person's emotional or volitional capacity which predisposes the person to commit sexually violent offenses." RSA 135-E:2, VII. The term "[l]ikely to engage in acts of sexual violence" means that "the person's propensity to commit acts of sexual violence is of such a degree that the person has serious difficulty in controlling his or her behavior as to pose a potentially serious likelihood of danger to others." RSA 135-E:2, VI.

The agency with custody of the inmate is required to give notice of his impending release to either the county attorney or the attorney general. *Id.* If either the county attorney or the attorney general has "an articulable basis to believe that the person is likely to engage in acts of sexual violence," he or she may, within forty-five days of receipt of such notice, request an assessment of the individual by a multidisciplinary team to determine whether the person is a sexually dangerous predator. RSA 135-E:3, III. The multidisciplinary team "shall include, but is not limited to, 2 licensed psychiatrists or psychologists or one licensed psychiatrist and one licensed psychologist each of whom has specialized training or experience in the area of treatment and diagnosis of sex offenders." RSA 135-E:3, I. "[T]he court shall appoint legal counsel to represent the person before any interview or personal examination of the person is conducted by the multidisciplinary team." *Id.* If the person is unable to pay for counsel, the court shall appoint counsel pursuant to RSA 604-A:2. *Id.*

The multidisciplinary team assesses and evaluates the person, including "a review of the person's institutional history and treatment record, if any, the person's criminal background, and any other factor that is relevant to the determination of whether such person is a sexually violent predator." RSA 135-E:3, V(a). The person being evaluated must be offered a personal interview. RSA 135-E:3, V(c). Within four months after receiving the request for an assessment and evaluation, the multidisciplinary team's written report containing its findings must be provided to the county attorney or attorney general. *Id.*

If the multidisciplinary team finds that the person meets the definition of a sexually violent predator, within fourteen days of receiving the team's

report, the county attorney or attorney general may file a petition with the superior court "alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation." RSA 135-E:6. A copy of the petition must also be sent to the person who is the subject of the petition. *Id.* Within ten days of the filing of the petition, "the court shall determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator." RSA 135-E:7. If the court so finds, it must order that the person remain in custody in an appropriate secure facility for further proceedings. *Id.*

Within sixty days after the trial court's initial determination of probable cause, or, in cases where a jury trial has been elected, within sixty days after election of a jury trial, the court must conduct a trial "to determine whether the person is a sexually violent predator." RSA 135-E:9, II. Either side may demand a jury trial. RSA 135-E:9, I. The person may retain experts or mental health professionals to perform an examination. RSA 135-E:9, IV.

At trial, the rules of evidence, statutes and rules governing the doctor-patient privilege and privileged communications "or other similar statutes or rules shall not apply." RSA 135-E:10, I. The court may consider evidence of the person's prior conduct if such evidence is relevant to the issue of whether the person is a sexually violent predator. RSA 135-E:10, II. The multidisciplinary team's report is inadmissible unless the court finds the report's probative value substantially outweighs its prejudicial effect. RSA 135-E:10, III. Notwithstanding the general inapplicability of the rules of evidence, hearsay evidence is not admissible "unless it falls within one of the recognized exceptions to the hearsay rule or unless the court finds that the hearsay evidence contains circumstantial guarantees of trustworthiness and the declarant is unavailable to testify." RSA 135-E:10, IV. Hearsay evidence shall not be used as the sole basis for committing a person. *Id.*

The State has the burden of proving by clear and convincing evidence that the person is a sexually violent predator. RSA 135-E:11, I. If the determination is made by a jury, the verdict must be unanimous. *Id.* If the court or jury determines that the person is a sexually violent predator, upon the expiration of the incarcerative portion of all sentences, "the person shall be committed to the custody of the department of corrections for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person no longer poses a potentially serious likelihood of danger to others." RSA 135-E:11, II. An order committing a person is valid for up to five years. *Id.* The determination that a person is a sexually violent predator may be appealed. RSA 135-E:11, III. The public defender must be appointed to represent the person on appeal if the person is indigent. *Id.*

Before the end of the five-year commitment period, the county attorney or attorney general may petition to recommit the person for another five-year period. RSA 135-E:12, I. The trial court is required to hold a hearing and the person "is entitled to the benefit of all procedural protections afforded the person at the initial trial, except for the right to a jury." RSA 135-E:12, II. At the hearing, the State has the burden of proving by clear and convincing evidence that the person remains a sexually violent predator. *Id.*

Either the committed person or the commissioner of the department of corrections may file a petition for discharge at any time. RSA 135-E:13, :14. If the commissioner files such a petition, the court must hold a hearing at which the State bears the burden of proving by clear and convincing evidence that the person remains a sexually violent predator. RSA 135-E:13, I-II. If the committed person files such a petition and the court determines that appointment of counsel may assist in "an appropriate resolution" of the petition, the court must appoint counsel to represent the person if he or she is indigent. RSA 135-E:14. If the court determines that the petition is without merit on its face, the court may deny the petition without a hearing. *Id.*

The New Hampshire Department of Health and Human Services is required to adopt rules relative to the designation of secure facilities for sexually violent predators who are subject to involuntary commitment, the components of basic treatment plans, procedures to be followed by the multidisciplinary teams, and the protocol for informing a person that he or she is being evaluated to determine whether he or she is a sexually violent predator. RSA 135-E:22. Among the rules promulgated is New Hampshire Administrative Rule He-C 702.04, establishing the requirements for treatment plans for sexually violent predators. Pursuant to the rule, a person committed as a sexually violent predator is provided a treatment team that is required to develop an individual treatment plan for that person "based upon the individual needs of the person as determined via the person's assessment, and established within 30 days of the person's commitment to a secure facility." N.H. ADMIN. RULES, He-C 702.04(a). An individualized treatment plan shall:

(1) Be offender specific;

(2) Be tailored to the offender's criminal history, cognitive patterns, sexual arousal patterns, offense patterns, co-occurring conditions, risk assessment, relapse profile, and current circumstances;

(3) Address any medical conditions as identified by a comprehensive medical examination;

(4) Contain measurable treatment goals, objectives, and treatment interventions;

(5) Contain the timelines for goal attainment;

(6) Clearly define the expectations of the person;

(7) Specify clinical screening and progress assessment tools to be administered, and expectations thereof . . . ;

(8) Indicate the treatment program staff responsible for treatment and supervision;

(9) Integrate the collaborative efforts of all criminal justice and treatment agencies responsible for treatment and supervision of the person, including substance abuse providers, mental health providers, and those responsible for the identification of medication management strategies when indicated;

(10) Be reviewed quarterly . . . ; and

(11) Be signed and dated by all members of the treatment team.

N.H. ADMIN. RULES, He-C 702.04(b)(1)-(11).

The administrative rules also set forth specific requirements that the individualized portion of the treatment plan shall address. The rules require that each individualized treatment plan be reviewed quarterly by the treatment team and set forth the specific required components of the review documentation. *See* N.H. ADMIN. RULES, He-C 702.04(c)-702.05(c). The fourth quarterly review serves as the annual individualized treatment plan review, and in addition to the components of a quarterly review, the components of the annual review must include:

(1) Determination of whether the person is likely to commit acts of sexual violence if discharged;

(2) Review of the person's psychiatric and medical diagnosis(es);

(3) Reassessment of the person's medications, if applicable;

(4) Assessment of the need for additional services and/or revisions to the [individualized treatment plan];

(5) Need for other health care or social services;

(6) A list of the participants in this annual review process;

(7) A description of the level of the person's participation, if any, in the review; and

(8) The dated signatures of all the members of the treatment team.

N.H. ADMIN. RULES, He-C 702.05(d)-(e).

*II. Due Process*

The defendant first argues that the procedures set forth in RSA chapter 135-E "violate[] his rights under the due process clauses contained in the Fifth and Fourteenth Amendments to the United States Constitution, and Part I, Article 15 of the New Hampshire Constitution." We first address the defendant's claim under the State Constitution, citing federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 233 (1983).

The defendant grounds his challenge in procedural due process. Three factors are considered in analyzing a procedural due process claim: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. *See In re Eduardo L.*, 136 N.H. 678, 686 (1993); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

As to the first factor, we have recognized that "[t]he private interests at stake in civil commitment proceedings, loss of liberty and social stigmatization, are substantial and parallel those at risk in the criminal context." *In re Richard A.*, 146 N.H. 295, 298 (2001); *see Addington v. Texas*, 441 U.S. 418 (1979) (civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection). Because the private interests at stake in this case are substantial, we must weigh the second factor, risk of an erroneous deprivation of those interests, against the third factor, the government's interest. *Richard A.*, 146 N.H. at 298.

The defendant argues that in two specific respects the enacted procedures inadequately protect his liberty interest against erroneous deprivation. He argues that "[f]irst, RSA 135-E:10 violates due process in abrogating the rules of evidence without enacting an adequate substitute. Second, RSA 135-E:11 violates due process in failing to require the State to prove the allegations of the petition beyond a reasonable doubt."

*A. Rules of Evidence*

The defendant argues that "[o]ther than with regard to hearsay, RSA 135-E:10 leaves the parties with no ready principles by which to determine the admissibility of evidence" and that "[t]he absence of any rules . . . to govern the admission of evidence deprives the court of a powerful tool for the prevention of the prejudicial misuse of information." The State argues that "a civil commitment proceeding under RSA chapter 135-E should not be deemed unreliable solely because the rules of evidence do not apply." Given the numerous safeguards in the statute to protect against the risk of

erroneous deprivation of the defendant's liberty interest, the State contends that RSA 135-E:10 in fact "allows the trial court broader discretion to hear and consider the evidence that it deems reliable and pertinent."

The fact that the private interests at stake in civil commitment proceedings parallel those at risk in the criminal context "does not compel identical procedural safeguards under the State Constitution." *Richard A.*, 146 N.H. at 298. "Because the primary focus of an involuntary commitment proceeding is the mental condition and dangerousness of the person sought to be committed rather than determination of guilt or innocence, the full range of protections afforded by the State and federal due process provisions does not come into play." *Id.* (quotation and brackets omitted). The individual's liberty interest "is not absolute" and the "individual's constitutionally protected interest in avoiding physical restraint may be overridden even in the civil context," provided that "the confinement takes place pursuant to proper procedures and evidentiary standards." *Kansas v. Hendricks*, 521 U.S. 346, 356-57 (1997).

In various other proceedings, the New Hampshire Rules of Evidence do not apply. *See* N.H. R. Ev. 1101(d)(3). However, in such proceedings we have nonetheless required some degree of trustworthiness in order for evidence to be admissible. For example, in *In re Eduardo L.* we stated that "[i]t is settled that due process applies to juvenile certification proceedings" and "requires that the defendant be given notice, a hearing, the right to review records, and the assistance of counsel," and that evidence admitted at the hearing be trustworthy. *Eduardo L.*, 136 N.H. at 684-85. We discerned "no substantial risk in relying upon the district court's ability to consider the trustworthiness of the evidence at issue." *Id.* at 687; *see also State v. Arnault*, 114 N.H. 216, 219 (1974) (decided before adoption of the rules of evidence) (in a probable cause hearing the trial court, "within its discretion, may admit evidence which it finds relevant, not too remote, and given by a credible witness").

"It is a basic principle of statutory construction that a legislative enactment will be construed to avoid conflict with constitutional rights wherever reasonably possible." *State v. Smagula*, 117 N.H. 663, 666 (1977). Given that the trial court is vested with the discretion to make initial determinations of relevancy and reliability, we construe RSA 135-E:10 as requiring the trial court to admit only evidence that satisfies these basic requirements. *See State v. Lee*, 716 N.E.2d 751, 757 (Ohio Ct. App. 1998) (relaxed standard for admissibility of evidence cannot be equated with automatic admissibility of any and all materials); *In re Civil Commitment*

*of Pittman*, No. A09-1931, 2010 WL 1541453, at *3 (Minn. Ct. App. April 20, 2010) (although rules of evidence do not apply, simple notions of due process must apply).

These basic requirements of relevance and reliability refute the defendant's assertion that in the absence of formal application of the rules of evidence, the jury will be faced with "the unregulated presentation of information." Moreover, other requirements in RSA 135-E:10 support these fundamental protections: the introduction of evidence of the individual's prior conduct is allowed only when such evidence "is relevant to the issue of whether the person is a sexually violent predator"; the multidisciplinary team's report is inadmissible unless the court finds that the report's "probative value substantially outweighs its prejudicial effect"; and hearsay evidence is not admissible unless it falls within a recognized exception or the court finds that it "contains circumstantial guarantees of trustworthiness and the declarant is unavailable to testify." RSA 135-E:10, II-IV. Under these circumstances, the statute withstands the defendant's argument that it "leaves the parties with no ready principles by which to determine the admissibility of evidence." Accordingly, we conclude that the procedures under RSA 135-E:10 adequately protect the defendant's private interest against erroneous deprivation.

*B. Burden of Proof*

In addition, the defendant argues that RSA 135-E:11 violates the second factor in a procedural due process analysis by failing to require the State to prove the allegations in the petition for commitment as a sexually violent predator beyond a reasonable doubt. In *Addington v. Texas*, the Supreme Court addressed the standard of proof required by the Fourteenth Amendment to the Federal Constitution in a civil proceeding brought under state law to commit an individual involuntarily for an indefinite period to a state mental hospital. *Addington*, 441 U.S. at 419. The Court recognized that

> civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. Moreover, it is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual. Whether we label this phenomena "stigma" or choose to call it something else is less important than that we recognize that it can occur and that it can have a very significant impact on the individual. The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority

under its police power to protect the community from the dangerous tendencies of some who are mentally ill.

*Id.* at 425-26 (citations omitted).

However, the Court also recognized that

[t]here are significant reasons why different standards of proof are called for in civil commitment proceedings as opposed to criminal prosecutions. In a civil commitment state power is not exercised in a punitive sense. . . . [A] civil commitment proceeding can in no sense be equated to a criminal prosecution. In addition, the "beyond a reasonable doubt" standard historically has been reserved for criminal cases. This unique standard of proof, not prescribed or defined in the Constitution, is regarded as a critical part of the moral force of the criminal law, and we should hesitate to apply it too broadly or casually in noncriminal cases.

*Id.* at 428 (citations and quotation omitted).

The Court stated that while "the preponderance standard falls short of meeting the demands of due process . . . the reasonable-doubt standard is not required." *Id.* at 431. The Court found the reasonable doubt standard "inappropriate in civil commitment proceedings because, given the uncertainties of psychiatric diagnosis, it may impose a burden the state cannot meet and thereby erect an unreasonable barrier to needed medical treatment." *Id.* at 432. Therefore, the Court concluded that the middle level burden of proof, clear and convincing evidence, "strikes a fair balance between the rights of the individual and the legitimate concerns of the state." *Id.* at 431. The Court explained that while some states have chosen to adopt the criminal law standard for civil commitment proceedings, this more stringent standard of proof is not required and is not adaptable to the needs of all states. *See id.* at 431-32. "The essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold. As the substantive standards for civil commitment may vary from state to state, procedures must be allowed to vary so long as they meet the constitutional minimum." *Id.* at 431. Accordingly, the Court stated that "determination of the precise burden equal to or greater than the 'clear and convincing' standard which we hold is required to meet due process guarantees" is a matter of state law. *Id.* at 433.

Despite the Supreme Court's 1979 ruling in *Addington*, we declined in 1982 to reexamine the reasonable doubt requirement recognized in *Proctor v. Butler*, 117 N.H. 927, 935 (1977), as applicable to civil commitment

proceedings under RSA chapter 135-C (civil commitment of mentally ill). Rather, we advised the Senate that we were not persuaded that the clear and convincing standard of *Addington* "adequately protects the liberty interests of our citizens." *Opinion of the Justices*, 122 N.H. 199, 204 (1982). Thereafter, the Constitutional Convention of 1984 proposed, and the voters subsequently adopted, an amendment to Part I, Article 15 that states: "In any proceeding to commit a person acquitted of a criminal charge by reason of insanity, due process shall require that clear and convincing evidence that the person is potentially dangerous to himself or to others and that the person suffers from a mental disorder must be established." *In re Sanborn*, 130 N.H. 430, 444 (1988) (quotation omitted).

Four years later we addressed the effect of this constitutional amendment on the standard of proof for commitment on civil petition under RSA chapter 135-C. *Id.* at 431. As we noted, "[t]he terms of the amendment do not, of course, deal with commitments under RSA 135-C:34, and the respondent urges us to limit the amendment's effect to criminal insanity cases, which the application of its terms literally requires." *Id.* at 444. We were, however, "unanimous . . . in believing that we have no such option to confine the effect of the 1984 amendment, for we perceive no intellectually realistic basis for holding that due process can require a burden of proof under RSA 135-C:34 that is different from the State's burden when it seeks commitment after a verdict of not guilty by reason of insanity to a criminal charge." *Id.* We concluded that "[t]here being no apparent justification for different standards, the 1984 amendment to article 15 requires . . . [that] [h]enceforth the petitioner's burden of proof in commitment proceedings under RSA 135-C:34 shall be that of clear and convincing evidence," thereby overruling *Proctor v. Butler* insofar as it imposed a reasonable doubt burden of proof in civil commitment cases. *Id.* at 446.

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addington*, 441 U.S. at 423 (quotation omitted). "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Id.* As we have recognized, "[w]hile the clear and convincing standard falls short of the proof required to secure a criminal conviction, it nevertheless sends a strong message to the fact finder about the degree of certainty required before a civil commitment can be imposed." *Richard A.*, 146 N.H. at 298-99. Based upon *Addington* and *Sanborn*, we hold that the clear and convincing

standard of proof in RSA chapter 135-E does not violate the state constitutional due process guarantee.

The defendant argues that the procedures contained in RSA chapter 135-E carry the risk of erroneous deprivation of his liberty interest. However, the statute affords a number of safeguards designed to protect against erroneous commitment including: the right to counsel, which is provided at State expense for indigent individuals; the right to retain mental health professionals to perform an independent mental health assessment; the right to a probable cause hearing; the right to an interview with the multidisciplinary team; the right to retain experts at State expense for indigent individuals; the right to a jury trial; the right to exclude hearsay evidence; the requirement that the State prove its case by clear and convincing evidence; the right to a unanimous jury verdict; the right to appeal; and the right to petition for discharge at any time. We find these protections adequate.

Having concluded that neither the procedures nor the burden of proof set forth in the statute carry undue risk of an erroneous deprivation of the defendant's private interests, we consider the third factor in analyzing the defendant's procedural due process claim — the government's interest in the purpose of the statute. Here the State has a strong interest in protecting the public from, and providing care and treatment for, sexually violent predators. *See In re Christopher K.*, 155 N.H. 219, 225 (2007); *In re Moulton*, 96 N.H. 370, 374-75 (1950); *Addington*, 441 U.S. at 426. Accordingly, we weigh heavily this factor and, on balance, conclude that the defendant's rights to procedural due process are not violated by the procedures set forth in RSA chapter 135-E. It is also noteworthy that, despite seven days of trial, generating over one thousand pages of trial transcripts, in addition to a three-day *Daubert* hearing, the defendant does not argue that the statute *as applied to him* resulted in an unconstitutional deprivation of rights. *See Baker Valley Lumber v. Ingersoll-Rand*, 148 N.H. 609, 614 (2002) (adopting standard of reliability set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

Because the Federal Constitution does not provide any greater protection than does the State Constitution with regard to the defendant's procedural due process claims, we reach the same result under the Federal Constitution. *See State v. Veale*, 158 N.H. 632, 645 (2009), *cert. denied*, 130 S. Ct. 748 (2009).

*III. Separation of Powers*

The defendant next argues that based upon our decision in *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. 562 (1997) (pro-

posed legislation modifying court rule of evidence would violate separation of powers), we must hold that RSA 135-E:10 violates the principle of separation of powers under Part I, Article 37 of the State Constitution. He asserts that by eliminating the application of the rules of evidence, "the legislature seeks to control how a court regulates evidence in adjudicating sexually violent predator civil commitment cases," thereby usurping the judicial function of making relevancy determinations in sexual predator cases without regard for the particular facts or circumstances involved in such a case.

The State argues that *Opinion of the Justices* does not apply because RSA 135-E:10 "does not modify an existing rule of evidence that this Court had adopted," "[n]or does it create . . . [a] partial abrogation or modification of the rules of evidence." Instead, the State argues, the statute simply creates an exception for a particular type of proceeding from the general principle that the rules of evidence apply, an action that the legislature is expressly allowed to take under New Hampshire Rule of Evidence 1101(b). We agree.

Because *Opinion of the Justices* was an advisory opinion issued in response to a request from the Senate, rather than a litigated case, the opinion does not constitute binding precedent. *See New Hampshire Health Care Assoc. v. Governor*, 161 N.H. 378, 392 (2011); *Opinion of the Justices*, 84 N.H. 559, 582-83 (1930). Nonetheless, the circumstances of this case are different and the State does not ask us to reexamine *Opinion of the Justices*.

New Hampshire Rule of Evidence 1101, in effect when RSA chapter 135-E was enacted, provided in part:

(a) *Courts*. — These rules apply to the proceedings in the district courts, probate courts, superior court, and the supreme court.

(b) *Proceedings Generally*. — These rules apply generally to all civil and criminal proceedings unless otherwise provided by the constitution or statutes of the State of New Hampshire or these rules.

Under the plain language of Rule 1101(b), the rules of evidence apply to civil proceedings unless otherwise provided by statute. Here, the legislature has expressly provided that the rules do not apply to proceedings under RSA chapter 135-E. Unlike the proposed legislation addressed in *Opinion of the Justices*, RSA 135-E:10 does not modify an existing rule of evidence adopted by this court under its rulemaking authority. Because

there is no conflict between the statute and the rules of evidence, we hold that the statute does not violate our state's constitutional provision mandating the separation of powers.

*IV. Equal Protection*

Finally, the defendant argues that RSA chapter 135-E violates his right to equal protection of the laws because it enacted lesser procedural protections than New Hampshire law affords to persons facing civil commitment under RSA chapter 135-C or RSA chapter 171-B. Specifically, the defendant points to the statute's express preclusion of the rules of evidence. The defendant relies upon the Fourteenth Amendment to the United States Constitution and Part I, Articles 1, 12, and 14 of the New Hampshire Constitution. We first address the defendant's claim under the State Constitution, citing federal opinions for guidance only. *See Ball*, 124 N.H. at 233.

The equal protection guarantee is "essentially a direction that all persons similarly situated should be treated alike." *In re Sandra H.*, 150 N.H. 634, 637 (2004) (quotation omitted). "Holding that persons who are not similarly situated need not be treated the same under the law is a shorthand way of explaining the equal protection guarantee. Whether applying a strict scrutiny, intermediate, or rational basis standard of review, we determine whether differences between the classes justify disparate treatment under the law." *Id.* at 638.

When we review legislation under equal protection analysis, the level of scrutiny applied depends upon the type of legislative classification at issue. Classifications based upon suspect classes or affecting fundamental rights are strictly scrutinized. *See id.* at 637. Intermediate scrutiny applies to discriminatory classifications involving "important substantive rights." *Id.* at 638 (quotation omitted). In all other cases, the court employs the rational basis test. *Id.*

The defendant argues that strict scrutiny ought to apply. As the trial court noted in its order denying the defendant's motion to dismiss, of the courts that have addressed this issue in other jurisdictions, most have applied rational basis review. *See, e.g., Martin v. Reinstein*, 987 P.2d 779, 796 (Ariz. Ct. App. 1999); *In re Detention of Samuelson*, 727 N.E.2d 228, 236 (Ill. 2000); *In re Detention of Williams*, 628 N.W.2d 447, 453 (Iowa 2001); *In re Treatment and Care of Luckabaugh*, 568 S.E.2d 338, 351 (S.C. 2002). Quoting *Martin*, 987 P.2d at 796, the trial court reasoned that

> while [the defendant] assert[s] that RSA 135-E affects [his] fundamental right to liberty, the classification itself only affects

[his] right to have applied to [him] the rules and procedures applicable in the general civil commitment proceedings. But [he] ha[s] not pointed the Court to, and the Court has not found, a fundamental right to have particular procedures apply. The courts that have analyzed equal protection challenges based upon the application of differing sets of rules have applied the rational basis test, even in cases such as this one, where liberty may ultimately be at stake.

(Quotations and brackets omitted.)

We agree with the trial court that the rational basis standard applies here. Under this standard the party challenging the statute bears the burden of showing that the statutory classification does not bear a rational relationship to a legitimate state interest. *Verizon New England v. City of Rochester*, 151 N.H. 263, 270 (2004). The defendant must show that "the classification is arbitrary or without some reasonable justification." *Id.* "Where a classification realistically reflects the fact that the two groups are not similarly situated in certain circumstances, and the legislation's differing treatment of the groups is sufficiently related to a government interest, it will survive an equal protection challenge." *Sandra H.*, 150 N.H. at 638 (quotations, brackets and citation omitted).

In enacting RSA chapter 135-E, the legislature explicitly found that sexually violent predators have special treatment needs and present unique risks to society. As the statute provides, "a small but extremely dangerous number of sexually violent predators exist who have antisocial personality features which are unamenable to existing mental illness treatment modalities, and those features render them likely to engage in criminal, sexually violent behavior." RSA 135-E:1. The legislature also found that "[t]he existing involuntary commitment procedures for the treatment and care of mentally ill persons are inadequate to address the risk these sexually violent predators pose to society." *Id.* Therefore, the intent of the legislature is "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators." *Id.*

The legislature has thus declared that sexually violent predators are different from other civilly committed persons with respect to treatment and risk. Accordingly, the purpose of RSA chapter 135-E is to both provide care and treatment to sexually violent predators and to protect society from such dangerous persons. These are legitimate state interests. *See Christopher K.*, 155 N.H. at 225 (providing care to the mentally ill and protecting society from dangerous persons are legitimate state interests); *see also Conn. Dept. of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003) (sex

offenders are a serious threat in this nation and the public interest in protecting vulnerable members of the community from sexual predators is a compelling one).

Although the defendant argues that "sex offender civil commitment and New Hampshire's other forms of civil commitment present similar challenges" with regard to the application of the rules of evidence, he has failed to establish that the classification is irrational or arbitrary. *See Samuelson*, 727 N.E.2d at 237 (persons subject to the Sexually Dangerous Persons Act possess characteristics which set them apart from the greater class of persons who fall within the Mental Health Code, and such persons present different societal problems); *Martin*, 987 P.2d at 797 (given the difference between sexually violent persons and other classes of mentally ill, it was not irrational or unreasonable for the legislature to determine that the underlying mental conditions of sexually violent persons render them unamenable to or inappropriate candidates for existing involuntary commitment procedures); *Merryfield v. State*, 241 P.3d 573, 578 (Kan. Ct. App. 2010) (defendant failed to demonstrate that sexually violent predators are similarly situated to others confined for mental illness).

 In contrast to individuals facing civil commitment under RSA chapter 135-C (mental illness) or RSA chapter 171-B (persons with an "intellectual disability" found not competent to stand trial), far different criteria must be met to qualify as a sexually violent predator under RSA chapter 135-E. For example, the individual must have been convicted of a sexually violent offense and must suffer from a mental abnormality or personality disorder that makes it likely that he or she will engage in acts of sexual violence in the future if not confined in a secure facility for long-term control, care, and treatment. RSA 135-E:2, XII. Given the specific characteristics of individuals subject to civil commitment under RSA chapter 135-E as identified by the legislature and the unique nature of the proof required to meet the statutory requirements for civil commitment as a sexually violent predator, the need for different procedures in this context is rationally related to a legitimate governmental interest. *Sandra H.*, 150 N.H. at 638. "Where a classification realistically reflects the fact that the two groups are not similarly situated in certain circumstances, and the legislation's differing treatment of the groups is sufficiently related to a government interest, it will survive an equal protection challenge." *Id.* (quotations, brackets and citation omitted).

The defendant cites *Grindle v. Miller*, 119 N.H. 214 (1979), and argues that following the logic in that case, we "must find RSA 135-E's prohibition on the rules of evidence to violate equal protection." In *Grindle*, the defendant challenged the constitutionality of RSA chapter 173-A, the

Dangerous Sexual Offenders Act, a prior version of the statute before us here. *Id.* at 215. The plaintiff in *Grindle* contended that there was no rational basis for distinguishing between a dangerous sexual offender and other individuals involuntarily committed in order to justify differing release procedures under the applicable statutes. *Id.* at 216. In upholding the statute we noted that "permitting different procedures for the commitment and release of [dangerous sexual offenders] from those provided for commitment of persons acquitted by reason of insanity or civil commitments generally would violate equal protection under [the State Constitution]." *Id.* at 217. However, the case was decided based upon specific statutory construction and contains no analysis of the constitutional issues alluded to. Furthermore, the former dangerous sexual offender statute at issue in *Grindle* was substantively different from RSA chapter 135-E. Accordingly, we decline to apply the case as controlling precedent on the question before us. *See Trustees v. Exeter*, 90 N.H. 472, 479-81 (1940).

We hold that, on its face, RSA chapter 135-E does not violate the defendant's right to equal protection under the New Hampshire Constitution. Because the Federal Constitution does not offer greater protection than our State Constitution, we reach the same conclusion under the Federal Constitution. *See Sandra H.*, 150 N.H. at 637.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and LYNN, JJ., concurred.