NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2017-0403


THE STATE OF NEW HAMPSHIRE

v.

JOHN T. BRAWLEY

Argued:  June 14, 2018
Opinion Issued:  September 18, 2018


Gordon J. MacDonald, attorney general (John J. Conforti, assistant attorney general, on the brief, and Laura E.B. Lombardi, senior assistant attorney general, orally), for the State.


John T. Brawley, self-represented, filed no brief.


American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette on the brief), New Hampshire Legal Assistance, of Manchester (Elliott Berry on the brief), and Albert E. Scherr, of Concord, on the brief and orally, as amici curiae.

DONOVAN, J. The State appeals an order of the Superior Court (Schulman, J.) denying a motion for a bench warrant filed by the New Hampshire Division of Administrative Services, Office of Cost Containment (OCC)[1] to secure the appearance of the defendant, John T. Brawley, at a show cause hearing. We reverse and remand.

The record supports the following facts. The defendant was charged with two criminal offenses in the Circuit Court that were transferred to the Superior Court for a jury trial. Because the defendant was indigent, the trial court appointed a public defender to represent him. At that time, the trial court issued an order, pursuant to RSA 604-A:9 (2001), requiring the defendant to reimburse the OCC for the costs and expenses associated with his public defense and directed him to contact the OCC, within 5 days of the court's order, to verify his mailing address and to make payment arrangements. The jury acquitted the defendant of both charges following the trial.

The State alleges that the OCC attempted to contact the defendant prior to and following his trial to arrange for his reimbursement of these costs, but to no avail. Consequently, the OCC filed a motion with the trial court alleging that the defendant did not comply with his payment obligations or provide any cause for his non-compliance. The trial court scheduled a show cause hearing for February 2017, but the defendant failed to appear. In response, the trial court issued an arrest warrant for the defendant and set bail at $50. The defendant was subsequently arrested in March 2017 pursuant to the warrant and paid the $50 bail as a condition of his release. When he posted his bond payment, the defendant attested to having the same address he initially provided to the OCC and to the trial court. The bail payment was remitted to the OCC, thereby reducing the defendant's reimbursement obligation.[2]

Thereafter, the OCC requested a further hearing on its show cause motion alleging that the defendant made no other payments toward his obligation. The trial court scheduled a second show cause hearing for June 2017, but the defendant, again, failed to appear. In response, the OCC requested that the trial court issue a warrant for the defendant's arrest and set bail in the full amount of his reimbursement obligation, which would then be forfeited to the OCC. Alternatively, the OCC requested that the defendant be jailed for three days before being permitted a bail hearing.

On this occasion, the trial court denied the OCC's motion, concluding that, in light of his acquittal, the defendant was "unconditionally discharged"

---

[1] The OCC acts as the State's debt collection agency in matters associated with the repayment of costs and expenses for court-appointed counsel.

[2] The record is unclear as to the true amount of the defendant's repayment obligation. The trial court's order suggests that the full amount of the defendant's obligation amounts to $453.75, which represents the original debt the OCC attempted to collect before the $50 bail payment was forfeited to the OCC. We leave this factual discrepancy for the trial court on remand.

from the criminal case. The court then reasoned that it lacked jurisdiction over the defendant to enforce its repayment order or require the defendant to show cause why he cannot, or should not, be required to reimburse the OCC for the costs associated with his public defense. The trial court further found that the defendant's reimbursement obligation constitutes a civil debt and that the OCC was, in effect, a civil judgment creditor required to pursue its collection efforts by initiating a separate civil collection action. This appeal followed.

A trial court's jurisdictional determination is subject to de novo review. See Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 453 (2015). Similarly, the trial court's finding that RSA 604-A:9 does not apply to an acquitted defendant involves a question of statutory interpretation that is also subject to de novo review. State v. Maxfield, 167 N.H. 677, 679 (2015). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Id. (quotation omitted). "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Id. (quotation omitted). "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. (quotation omitted). "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id. (quotation omitted).

The State argues that the trial court erred in ruling that RSA 604-A:9 does not confer continuing jurisdiction over an acquitted defendant for the purpose of enforcing repayment orders or otherwise collecting the costs associated with the defendant's public defense. The State further disputes the trial court's ruling that, because the notice provisions set forth in RSA 604-A:9, I-c do not apply to an acquitted defendant, the defendant's repayment obligation constitutes a "purely civil debt," requiring the OCC to initiate a separate civil action to secure repayment. We agree with the State.

The State is constitutionally and statutorily obligated to provide indigent criminal defendants with the option of court-appointed legal counsel in cases where a defendant's liberty is at risk. See RSA 604-A:2, I (Supp. 2017); N.H. CONST. pt. I, art. 15. RSA chapter 604-A provides a comprehensive framework and set of procedures by which the State first provides legal representation to indigent defendants in criminal cases "as a precondition to imprisonment," RSA 604-A:1 (Supp. 2017), and then seeks repayment from the defendant for the State's costs and expenses of that representation. See RSA 604-A:9. Pursuant to RSA 604-A:9, I, individuals who are provided with a public defense

3

are ordered by the court to repay the State the fees and expenses associated with the legal defense in accordance with established guidelines that determine the individual's financial ability to meet his or her obligation. The statute further provides, in relevant part, that:

> The court shall enter a separate order . . . setting forth the terms of repayment of fees and expenses to the state, or if the court finds that the defendant is financially unable to make such payment or payments setting forth the reasons therefor. . . . If the court does not order full payment for representation under RSA 604-A, the commissioner of administrative services or his designee shall perform an investigation to determine the defendant's present financial condition and his ability to make repayments and may petition the court for a new repayment order at any time within 6 years from the date of the original order.

RSA 604-A:9, I-b. The statute further provides that:

> III. If any repayment ordered pursuant to [this statute] becomes overdue, the court having originally appointed counsel may order any employer of a <u>former</u> <u>defendant</u> to deduct from that person's wages or salary the appropriate amount due and to pay such amount to the appropriate department . . . which shall refund such amount to the state . . . .
>
> . . . .
>
> V. If the defendant is incarcerated in the state prison, orders for repayment . . . may be suspended until the time of the defendant's release. . . . If the defendant has not been ordered to repay the state for expenses incurred on the defendant's behalf, at any time within 6 years of the time the defendant is released from the state prison the state may petition the superior court for repayment, and upon such petition the superior court shall order repayment unless the court finds the defendant is unable to comply with the terms of any order for repayment.
>
> VI. At any time within 6 years of the disposition of an action in which the court finds at the time of disposition or thereafter that the defendant is not able to make payments to the state . . . the state may petition the court for an order of repayment.

RSA 604-A:9, III, V, VI (emphasis added).

We have previously ruled that the repayment obligations set forth in RSA 604-A:9, I, are not extinguished by the dismissal of a defendant's charges and

that the State's interest in recouping the costs associated with the defendant's public defense are rationally based and constitutional. State v. Haas, 155 N.H. 612, 613-14 (2007). Although Haas did not involve a jurisdictional challenge, as a matter of statutory interpretation, we found that the purpose of RSA 604-A:9 "is to require that those who are financially able to do so, pay for a service that they received from the State." Id. at 613. The plain language of the statute reflects this purpose and also contemplates the State's recoupment of its costs and expenses after the disposition of an action without regard to the nature of the disposition, i.e., conviction, acquittal, or dismissal.

For example, RSA 604-A:9, VI, expressly authorizes the State to petition the trial court "[a]t any time within 6 years of the disposition of an action" for an order of repayment in cases where the trial court has previously determined that the defendant was not financially capable of making payments. The statute also authorizes the trial court to issue separate orders establishing the terms of repayment and the conditions by which those terms can be enforced or modified, including the deduction of wages from a "former defendant" following the resolution of the underlying criminal matter. See RSA 604-A:9, I-b, III. Thus, we conclude that RSA 604-A:9 confers upon the trial court continuing jurisdiction over an individual who has received a public defense until: (1) the State's repayment interests have been satisfied; or (2) the 6-year limitation set forth in RSA 604-A:9, I-b, V, and VI has lapsed.

The State next argues that the trial court erred by ruling that RSA 604-A:9, I-c's notice provisions do not apply to an acquitted defendant. The trial court ruled that RSA 604-A:9, I-c "cannot apply after the court loses jurisdiction over the defendant by virtue of [a] jury verdict of not guilty." As stated above, however, RSA 604-A:9 confers upon the trial court continuing jurisdiction until the defendant's reimbursement obligations have been resolved by either the satisfaction of the debt or the lapse of the limitations period. For this reason we find that the trial court erred in ruling that the notice provisions set forth in RSA 604-A:9, I-c do not apply to an indigent defendant who has been acquitted.[3] The plain language of RSA 604-A:9, I-c indicates that the notification provisions apply to all parties who have received a public defense, regardless of the nature of the disposition of the underlying criminal matter.

---

[3] Amici curiae agree with our conclusion that the notice provisions of RSA 604-A:9, I-c apply equally to all indigent defendants who have received a public defense, even if the defendant has been acquitted. Amici curiae also argue, however, that the notice provisions violate Part I, Articles 1 and 2 of the New Hampshire Constitution and the Fourteenth Amendment to the United States Constitution. This argument was not raised in the notice of appeal and, consequently, the State argues that it is not properly before us on appeal. Because we find that these constitutional challenges are not fully developed, we decline to address them here. See State v. Blackmer, 149 N.H. 47, 49 (2002) (declining to address any issue not raised in a notice of appeal).

That statute states, in relevant part, that:

> In a case where counsel has been appointed, the defendant shall
> be required to notify the clerk of the court and the [OCC] of each
> change of mail address and actual street address.  Whenever
> notice to the defendant is required, notice to the last mail address
> on file shall be deemed notice to and binding on the defendant.

RSA 604-A:9, I-c.  By this language, the legislature established specific notification procedures and imposed upon indigent defendants certain obligations that distinguish the RSA chapter 604's recoupment process from civil collection procedures.  Compare RSA 604-A:9, I-c, with Super. Ct. Civ. R. 51(c) ("judgment creditor shall cause the Notice of Hearing to be served either in-hand or by certified mail, restricted delivery, return receipt requested").  The legislature's use of the word "whenever" in RSA 604-A:9, I-c without reference to either the disposition of the defendant's underlying criminal matter or the initiation of a separate civil collection process, authorizes the State to rely upon the statute's notification procedures when seeking reimbursement.

Additionally, when read in the context of RSA chapter 604-A's entire statutory scheme, the legislature's inclusion of the term "whenever" in the statute's notification provisions signifies that it applies to proceedings governing the State's statutory right to initiate repayment proceedings within six years of the disposition of cases involving "former defendants" and after a defendant's release from prison.  See RSA 604-A:9, III, V, VI; see also State v. Dansereau, 157 N.H. 596, 598 (2008) (we interpret a statute in the context of the overall statutory scheme and not in isolation).  Accordingly, we conclude that the trial court's ruling that the OCC is required to comply with the notification procedures and requirements applicable to civil collection matters, rather than the notification provisions set forth in RSA 604-A:9, I-c, contradicts the plain meaning of the statute and is erroneous.

We now address the argument asserted by amici curiae that courts enforcing payment orders must comply with RSA 604-A:2-f (Supp. 2017) regardless of whether a debtor was acquitted.  The State maintains that this statute is inapplicable here because it was enacted more than a month after the proceedings at issue in this case and, at any rate, the trial court never held a "final hearing," as contemplated by RSA 604-A:2-f, because the defendant failed to appear.  Although this issue was not raised in the notice of appeal and the State's arguments are well-taken, we address it now because this question will likely arise on remand, it presents a question of statutory interpretation, which we would review de novo, and "[d]eciding it now will avoid unnecessarily burdening the parties with additional steps in the litigation process." LaChance v. U.S. Smokeless Tobacco Co., 156 N.H. 88, 91 (2007).

RSA 604-A:2-f was enacted for the purpose of providing certain procedural protections to indigent defendants who fail to pay an "assessment" or perform community service to satisfy their obligations to, among other things, repay the State's costs and expenses associated with their public defense. See RSA 604-A:2-f. These protections include the following requirements: (1) the court must "[p]rovide the defendant with a financial affidavit and direct the defendant to complete it," RSA 604-A:2-f, II(a); (2) the court must inform the defendant that he or she may be jailed immediately if the court finds that he or she has willfully failed to comply with the court's prior repayment orders, RSA 604-A:2-f, II(b); (3) the court must inform the defendant that he or she is entitled to counsel for the final hearing in which incarceration is a possible outcome and appoint counsel if the defendant desires and cannot afford counsel, RSA 604-A:2-f, II(c); and (4) the court must explain the issues that need to be decided and the process to be followed at the final hearing, RSA 604-A:2-f, II(d). RSA 604-A:2-f also requires that a defendant, facing possible incarceration, have counsel, or execute a waiver of counsel, at the final hearing. RSA 604-A:2-f, I. Incarceration of a defendant may occur only after the court has made a specific inquiry into the defendant's financial circumstances and the reasons for the defendant's noncompliance with repayment or community service orders, and the court finds that the defendant has willfully failed to pay or perform community service. Id.

Although this statute was enacted after the trial court issued its order in this case, we recognize that the question of its application to the defendant is likely to arise should the trial court have an opportunity to hold a final hearing. RSA 604-A:2-f is silent as to how it should be applied. "When legislation is silent as to whether the statute should apply prospectively or retrospectively, our interpretation turns on whether the statute affects the parties' substantive or procedural rights." State v. Hamel, 138 N.H. 392, 394 (1994). When a statute is remedial or procedural in nature, it may be applied to cases pending at the time of enactment. In re Silk, 156 N.H. 539, 542 (2007). If, on the other hand, "application of a new law would adversely affect an individual's substantive rights . . . it may not be applied retroactively." Id. In the final analysis, "the question of retrospective application rests on a determination of fundamental fairness, because the underlying purpose of all legislation is to promote justice." Id. (quotation omitted). Distinguishing substantive rights from procedural or remedial rights is not a simple or formulaic task, id. at 543, but we find that RSA 604-A:2-f affects the procedural rights of the parties and application of this new law on remand would not adversely affect either the State's or an indigent debtor's substantive rights. See State v. Ploof, 162 N.H. 609, 624 (2011) (recognizing an indigent defendant's right to appointed counsel as a procedural safeguard in RSA chapter 135-E (Supp. 2010) proceedings). We therefore conclude that RSA 604-A:2-f should be applied retroactively to the case before us, and we now explain why the statute applies to an acquitted defendant.

7

We agree with amici that an OCC obligation constitutes an "assessment" under RSA 604-A:2-f. Although the term is not defined by RSA chapter 604-A, "we look to the common usage, using the dictionary for guidance" under these circumstances. K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 80, 85 (2014). Black's Law Dictionary, in part, defines "assessment" as the "[i]mposition of something, such as a tax or fine, according to an established rate." Black's Law Dictionary 139 (10th ed. 2014). Indeed, RSA 604-A:9, I, limits an indigent defendant's repayment obligation to an amount no greater than the State's contractually established "flat rate for a contract attorney." Therefore, we find no distinction between a defendant's repayment obligation under RSA 604-A:9 and an "assessment" under RSA 604-A:2-f, and we hold that the procedures set forth in that statute shall apply to the proceedings on remand in this case.

Further, because RSA 604-A:2-f amends RSA chapter 604-A, which governs the representation of indigent defendants, we interpret its purpose in light of the policy sought to be advanced by the overall statutory scheme. See State v. Brouillette, 166 N.H. 487, 490 (2014) ("Our goal is to apply statutes in light of the policy sought to be advanced by the entire statutory scheme. . . . and not in isolation."). We have ruled that RSA 604-A:9 applies to acquitted defendants who have received the benefit of appointed counsel at the State's expense. It logically follows that the procedural protections set forth in RSA 604-A:2-f similarly apply to indigent defendants confronting a final hearing for nonpayment of the costs associated with the services of court-appointed counsel — regardless of the outcome of the underlying criminal matter. Accordingly, we reverse the trial court's rulings and remand for further proceedings consistent with this opinion.

Reversed and remanded.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.