# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0588, <u>State of New Hampshire v. Amuri Diole</u>, the court on July 11, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The respondent, Amuri Diole, was charged with, <u>inter</u> <u>alia</u>, four counts of aggravated felonious sexual assault. He was found not competent to stand trial, not reasonably likely to be restored to competency within 12 months, and dangerous. Thereafter, the State sought to civilly commit him pursuant to RSA chapter 135-E, which provides for the involuntary civil commitment of sexually violent predators. The respondent moved for a jury trial, governed by the rules of evidence, to determine whether he committed the acts charged. <u>See</u> RSA 135-E:5, II (2021). The Superior Court (<u>Nicolosi</u>, J.) denied the motion. Thereafter, following a two-day bench trial, the trial court found beyond a reasonable doubt that the respondent committed at least three sexually violent offenses and that his incompetence did not greatly impact the outcome of the proceeding. <u>See</u> <u>id</u>. The respondent appeals. We affirm.

On appeal, the respondent argues that RSA 135-E:5 violates: (1) the due process clauses of the State and Federal Constitutions, <u>see</u> N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV, by subjecting incompetent defendants to a determination of whether they committed the acts charged without a jury trial, the protections of medical privilege, and the safeguards of the rules of evidence; and (2) the equal protection clauses of the State and Federal Constitutions, <u>see</u> N.H. CONST. pt. I, arts. 1, 12, 14; U.S. CONST. amend. XIV, by denying incompetent defendants the aforesaid protections, all of which are afforded to competent defendants.

The respondent's arguments pose facial challenges to the constitutionality of RSA 135-E:5 and :10.

> When reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds. In other words, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution. When doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality. The party challenging a statute's constitutionality bears the burden of proof.

State v. Ploof, 162 N.H. 609, 614 (2011) (quotations omitted). We first consider the respondent's arguments under the State Constitution. See State v. Ball, 124 N.H. 226, 231-33 (1983).

A "[s]exually violent predator" is defined as any person who "[h]as been convicted of a sexually violent offense" and who "[s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." RSA 135-E:2, XII (2021). "Convicted of a sexually violent offense" means a person who has been: (1) adjudicated guilty of a sexually violent offense after a trial, guilty plea, or plea of nolo contendere; (2) adjudicated not guilty by reason of insanity of a sexually violent offense; or (3) found incompetent to stand trial on a charge of a sexually violent offense and the court makes the finding required pursuant to RSA 135-E:5. RSA 135-E:2, III (2021).

RSA 135-E:5, in turn, provides that when a defendant charged with a sexually violent offense is declared incompetent to stand trial and the attorney general seeks to civilly commit the defendant, the court

> shall first hear evidence and determine whether the person did commit the act or acts charged. The hearing on this issue shall comply with all the procedures specified in this section. After hearing evidence on this issue, the court shall make specific findings on whether the person did commit the act or acts charged beyond a reasonable doubt. In determining whether the state has met its burden, the court shall consider the extent to which the person's incompetence or developmental disability affected the outcome of the hearing, including the person's ability to assist his or her counsel by recounting the facts, identifying witnesses, testifying in his or her own defense, or providing other relevant information or assistance to counsel or the court. If the person's incompetence substantially interferes with the person's ability to assist his or her counsel, the court shall not find the person committed the act or acts charged unless the court can conclude beyond a reasonable doubt that the acts occurred, and that the strength of the state's case, including physical evidence, eyewitness testimony, and corroborating evidence, is such that the person's limitations could not have had a substantial impact on the proceedings. If, after the conclusion of the hearing, the court finds, beyond a reasonable doubt, that the person did commit the act or acts charged, the court shall enter a final order, appealable to the supreme court on that issue.

RSA 135-E:5, II. The rules of procedure and evidence applicable to the hearing include those set forth in RSA 135-E:10, which states:

In all civil commitment proceedings for sexually violent predators under this chapter:

I. The rules of evidence, the doctor-patient privilege under RSA 329:26, privileged communications pursuant to RSA 330-A:32, or other similar statutes or rules shall not apply in proceedings under this chapter.

II. The court may consider evidence of the person's prior conduct if such evidence is relevant to the issue of whether the person is a sexually violent predator.

III. Reports by a member of the multidisciplinary team or reports provided on behalf of the multidisciplinary team shall be inadmissible in proceedings under this chapter unless the court finds the report's probative value substantially outweighs its prejudicial effect.

IV. Notwithstanding the general inapplicability of the rules of evidence, hearsay evidence is not admissible unless it falls within one of the recognized exceptions to the hearsay rule or unless the court finds that the hearsay evidence contains circumstantial guarantees of trustworthiness and the declarant is unavailable to testify at the civil commitment proceedings. Hearsay evidence shall not be used as the sole basis for committing a person under this chapter.

The respondent contends that these statutes violate due process by permitting a "conviction" without a jury trial, denying the application of the rules of evidence, denying the protection of medical and therapist privileges, and allowing "conviction" based upon propensity evidence.

As the respondent recognizes in his brief, we have previously held that jury trials are not required in civil commitment proceedings under RSA chapter 135-C. See In re Sandra H., 150 N.H. 634, 636-37 (2004). The respondent argues, however, that unlike civil commitment proceedings under RSA chapter 135-C, the determination made in RSA 135-E:5 hearings is "quasi-criminal" because "the fact finder determines whether the defendant is guilty or innocent of a sexually violent offense." We disagree.

The purpose of the RSA 135-E:5 hearing is not to adjudicate guilt or innocence — the primary inquiry for the court is to determine whether the respondent "did commit the act or acts charged." RSA 135-E:5, II. As the State observes, "RSA 135-E:5 contains no mens rea requirement because, unlike the criminal laws, RSA chapter 135-E is not concerned with whether [a sexually violent predator] harbored a guilty mind when they committed a

sexually violent act."[1]  We are not persuaded by the respondent's arguments seeking to analogize his civil commitment proceeding under RSA 135-E:5 to a criminal trial, and conclude that he has failed to demonstrate that due process required a jury trial for his RSA 135-E:5 hearing.  Cf. Ploof, 162 N.H. at 619-24 (rejecting defendant's due process challenge to procedures set forth in RSA chapter 135-E).

Nor are we persuaded by the respondent's evidentiary-based due process arguments.  As the respondent recognizes, in State v. Ploof, we concluded that due process did not require application of the full rules of evidence during the defendant's hearing to determine whether he was a sexually violent predator.  Id. at 621.  We stated that "[b]ecause the primary focus of an involuntary commitment proceeding is the mental condition and dangerousness of the person sought to be committed rather than determination of guilt or innocence, the full range of protections afforded by the State and federal due process provisions does not come into play."  Id. at 620 (quotation omitted).  The respondent argues that the focus of his hearing under RSA 135-E:5, however, "is the determination of guilt."  As discussed above, the focus of the respondent's hearing under RSA 135-E:5 is whether the respondent committed the act or acts charged.  There is no mens rea component of the inquiry — the hearing is not focused upon a determination of guilt.  See RSA 135-E:5, II.

---

[1] We note that a petition for civil commitment under RSA 135-C:36 must allege specific acts or actions demonstrating dangerousness and a "commitment will not be ordered without proof of specific acts or actions demonstrating dangerousness."  In re Fasi a/k/a Cass, 132 N.H. 478, 484 (1989).  "However, while a civil commitment proceeding is initiated on the basis of an act alleged in the petition, the proceeding itself focuses on the present mental condition of the petitionee, and the propensity of the petitionee to commit future dangerous acts."  Id. at 483 (quotation omitted).  Similarly, here, the purpose of the respondent's hearing under RSA 135-E:5 was to satisfy an analogous "specific act" requirement — the State was required to prove that the respondent committed the act or acts underlying the sexually violent offense with which the respondent was originally charged.  Only after satisfying this "specific act requirement" would the State be able to file a petition alleging that the respondent is a sexually violent predator pursuant to RSA 135-E:6, following which the respondent will be entitled to a jury trial at which the State will have the burden of proving that he "[s]uffers from a mental abnormality or personality disorder that makes [him] likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment."  RSA 135-E:2, XII(b); see RSA 135-E:9, I, :11, I.

Furthermore, as the State asserts, the determination that the respondent committed the acts charged is part of "the ultimate determination of whether a person qualifies as [a sexually violent predator], which, in turn, serves the purpose of protecting the public from and providing care and treatment to [sexually violent predators]."[2]  We conclude, consistent with our analysis in Ploof, that the respondent has failed to demonstrate any due process violation.

Because the Federal Constitution does not provide any greater protection than does the State Constitution with respect to the respondent's due process claims, we reach the same result under the Federal Constitution.  See Ploof, 162 N.H. at 624.

Lastly, the respondent argues that his right to equal protection has been violated.  He argues that RSA chapter 135-E "allows competent persons to be declared a sexually violent predator only after being afforded a jury trial, the rules of evidence and . . . protection of medical privilege to determine if they have committed a sexually violent offense," while "incompetent persons can be convicted of a sexually violent offense after a bench trial where they are not afforded the protections of the rules of evidence or medical privilege."

We first address the respondent's claim under the State Constitution.  See Ball, 124 N.H. at 231-33.  "The equal protection guarantee is essentially a direction that all persons similarly situated should be treated alike.  Holding that persons who are not similarly situated need not be treated the same under the law is a shorthand way of explaining the equal protection guarantee.  Whether applying a strict scrutiny, intermediate, or rational basis standard of review, we determine whether differences between the classes justify disparate treatment under the law."  Ploof, 162 N.H. at 626 (quotations omitted).  Here, we apply the rational basis standard of review.[3]  See id.  Under this standard the party challenging the statute bears the burden of showing that the statutory classification does not bear a rational relationship to a legitimate state interest.  Id.  The respondent must show that the classification is

_____

[2] As discussed in footnote 1, the requirement that the State prove the act or acts charged is analogous to the "specific act" requirement in civil commitment proceedings under RSA chapter 135-C.  While civil commitment under that chapter will not be ordered without proof of specific acts or actions demonstrating dangerousness, "[s]uch acts are merely prognostic evidence of future dangerousness to be considered by a judge in determining a petitionee's state of mental health."  Fasi, 132 N.H. at 484.

[3] In his brief, the respondent states: "As a threshold matter, the [respondent] asserts that strict scrutiny should apply here because the disparate treatment affects a fundamental right: the [respondent's] liberty."  He continues, however: "The [respondent] recognizes, however, that this court appears to have adopted a rational basis test in State v. Ploof, 162 N.H. at 626-7.  Accordingly, the [respondent] analyzes the disparate treatment under rational basis analysis . . . ."  In light of this statement, our decision in Ploof, and the lack of any developed argument supporting strict scrutiny as the applicable standard of review, we apply the rational basis standard.  See MacDonald v. Jacobs, 171 N.H. 668, 681-82 (2019).

arbitrary or without some reasonable justification. Id. Where a classification realistically reflects the fact that the two groups are not similarly situated in certain circumstances, and the legislation's differing treatment of the groups is sufficiently related to a government interest, it will survive an equal protection challenge. Id.

The respondent's first alleged class — competent persons who have been afforded a jury trial, the rules of evidence, and the protection of medical privilege to determine if they have committed a sexually violent offense — are afforded said protections as part of criminal proceedings intended to determine whether they were guilty of the alleged crimes. By contrast, the respondent's second alleged class — incompetent persons who are afforded a bench trial without the protections of the rules of evidence or medical privilege — are not subject to criminal proceedings when the determination is made whether or not they committed the act or acts charged, and no determination is made as to whether they were guilty of the alleged offenses.

In explaining why different standards of proof are permitted in civil commitment proceedings as opposed to criminal prosecutions, we have noted that "there are significant reasons why different standards of proof are called for in civil commitment proceedings as opposed to criminal prosecutions. In a civil commitment state power is not exercised in a punitive sense. A civil commitment proceeding can in no sense be equated to a criminal prosecution." Id. at 622 (quotation, brackets, and ellipses omitted). Civil commitment proceedings under RSA chapter 135-E are intended to protect the public from, and provide care and treatment to, persons who are sexually violent predators. See id. at 624.

We conclude that the differing goals and purposes underlying criminal prosecutions and civil commitment proceedings provide a rational basis for the legislature's disparate treatment. A competent person charged with a sexually violent offense is subject to a criminal proceeding in which the determination of whether the person committed the act or acts charged is a subset of the determination of guilt or innocence of the charged offenses, and in which the State is exercising its power in a punitive sense. An incompetent person subject to a hearing under RSA 135-E:5, however, is not being charged with a crime, and no determination is being made as to guilt or innocence. Nor is the State exercising its power in a punitive sense — rather, the procedure is part of the State's exercise of its power to provide care and treatment to sexually violent predators and to protect society from such dangerous persons. See id. at 627. As the State asserts, the two classes of persons identified by the respondent are not similarly situated, and the differences identified in their treatment are justified under the rational basis standard.

6

Because the Federal Constitution does not offer greater protection than the State Constitution, we reach the same conclusion under the Federal Constitution.  See id. at 629.  Accordingly, we affirm the trial court's order.

Affirmed.


MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.


**Timothy A. Gudas,**
**Clerk**